# MARYLAND REPORTS.

OCTOBER TERM, A. D., 1871.

THE COMMONWEALTH OF VIRGINIA *vs*. THE CHESA-
PEAKE AND OHIO CANAL COMPANY, STATE OF
MARYLAND, and others.

*Preferred bonds of the Chesapeake and Ohio Canal
Company, issued under the Act of 1844, ch. 281—
Surrender of Interest coupons for Certificates of in-
debtedness, bearing interest—Application of Pay-
ments made on account of Interest upon the Certifi-
cates of indebtedness.*

The Chesapeake and Ohio Canal Company, under authority of the Act of
1844, chapter 281, issued certain bonds, with coupons for interest at-
tached, known as "Preferred bonds," which were declared to be pre-
ferred liens on its tolls and revenues, which were pledged for their pay-
ment—principal and interest. The Canal Company paid all the coupons
on these bonds to January, 1852, inclusive, but was unable to meet
those maturing 1st of July, 1852. It continued unable to pay those
maturing 1st of January and 1st of July, 1853, and foreseeing that it
would not be able to meet those to mature on the 1st of January, 1854,
by resolution of its Board of the 29th of July, 1853, it authorized said
coupons to be funded by issuing to the various holders thereof, certificates
of indebtedness, bearing interest, payable semi-annually. Under this
resolution, coupons of said dates to a large amount were surrendered by
the holders who accepted certificates in lieu thereof. Others were re-
tained. Upon these certificates interest was regularly paid to April,
1857, but until August, 1867, none of the coupons retained, and no
subsequently maturing coupons were paid, and from April, 1857, until

1

August, 1867, no interest on the certificates was paid. In August, 1867, the Board of President and Directors of the Canal Company, appropriated the net revenues then on hand to the payment of the outstanding coupons of July, 1852 and January, 1853, and to the payment of the interest upon the certificates, from 1857 to April, 1867. After this payment there still remained outstanding coupons embraced in the funding resolution, while the principal of the certificates was also unpaid. Upon a petition filed by the Canal Company to obtain a decision as to the proper distribution of its net revenues then on hand, and thereafter to accrue, among the holders of these certificates, the holders of the coupons not funded, and of those subsequently accrued, it was HELD:

1st. That the holders of the certificates of indebtedness were entitled to the same liens and priorities for their payment, as they would have had for the payment of the original coupons which they represented—the surrendering of the coupons, and the accepting in lieu thereof the certificates of indebtedness, in no way impairing the liens and priorities secured by the Act of 1844, chapter 281.

2d. That this priority, by the terms of the Act of 1844, chapter 281, extended only to the principal sum named in the certificates, and did not include the interest thereon.

3d. That the payments on account of interest upon the certificates of indebtedness, which were erroneously made, should be applied in extinguishment of the principal sums therein named; thus placing the holders of the certificates on the same footing as the holders of coupons outstanding and unfunded; but in making this application, interest should not be charged upon the moneys so paid.

APPEAL from the Circuit Court of Baltimore City.

After this case had been remanded for further proceedings, in conformity with the views expressed in the opinion of this Court on a former appeal, (32 Md., 527,) the appellee, the Chesapeake and Ohio Canal company, on the 19th of September, 1871, filed a petition setting forth that in accordance with the aforesaid decision, the company had paid off the whole of its repair bonds, principal and interest, with the exception of about $4,500, which had not then been demanded, but for which adequate provision had been made; that the said repair bonds, and interest thereon, having thus been either actually paid off or otherwise satisfactorily provided for, the net revenues of the petitioner were, according to the said deci-

sion, next to be applied to the payment of the overdue and unpaid coupons on all its preferred construction bonds in the order of seniority, including *pari passu* with others, the coupons paid and held by the appellant as guarantor; that the petitioner had then or expected soon to have on hand net revenues sufficient to pay and discharge two or more of the said overdue and unpaid coupons on the said preferred construction bonds, which it was desirous to appropriate in the manner and order so directed by the Court of Appeals; but in considering how to carry into effect the said decision, it was met with a difficulty which it was advised could only be removed by an order of Court—such difficulty being occasioned by the following circumstances: The petitioner having paid all the coupons on its preferred bonds to January, 1852, inclusive, found itself unable to meet those maturing on the 1st of July, 1852, and accordingly did not pay them. It continued unable to pay those maturing January 1, 1853, and July 1, 1853, and on the 29th of July, 1853, finding that it had become very much embarrassed, and foreseeing that it would not be able to meet the coupons to mature on 1st January, 1854, its board of president and directors, in the exercise of a power which was believed to be vested in them, authorized the said coupons of 1st July, 1852, 1st January, 1853, 1st July, 1853 and 1st January, 1854, amounting to $203,880 in the aggregate, to be funded by the issuing to the various holders thereof, of certificates of indebtedness, bearing interest, payable semi-annually, on the 1st of April and October, in each year. Under this resolution of the board, coupons on said bonds of said dates, amounting to $142,545 were funded—the holders surrendering their coupons and accepting certificates in lieu thereof. Coupons of said dates amounting to $61,335, were not funded under said resolution, but were retained by the respective holders thereof. Upon said certificates, interest was regularly paid up to April, 1857, but until August, 1867, none of said $61,335 of coupons, and no subsequently maturing coupons were paid, and from April,

1857, until August, 1867, an interval of ten years, no interest on the certificates was paid. In August, 1867, the board of president and directors, by resolution, appropriated the net revenues then on hand, to the payment of the outstanding coupons of July, 1852 and January, 1853, upon said preferred bonds, and also to the payment of the interest upon said certificates from 1857 until April 1, 1867. After this payment there remained still outstanding coupons, embraced in said funding resolution to the amount of $30,870, while the principal of said certificates was still also unpaid and outstanding. Under the aforesaid decision, these outstanding coupons amounting to $30,870, being the oldest overdue and unpaid coupons, were, as the petitioner was advised, manifestly entitled to be amongst, if not the very first paid; but inasmuch as the Court of Appeals also decided that the coupons on said bonds, whilst bearing interest from their respective maturity as against the petitioner, did not bear interest which was to be allowed payment out of the revenues of the company, in preference to the claims of the State of Maryland, the petitioner was unable to determine whether the said certificates were to be treated as simple contract debts of the company, or as standing in the place of the coupons which they represented, and thus entitled to be paid *pari passu* with the said outstanding coupons unfunded, and if equally entitled to the protection of the mortgage given to secure these bonds and the coupons thereon, whether the interest paid on said certificates from 1854 to 1857, and from 1857 to 1st April, 1867, was to be charged as so much paid on account of the principal thereof, extinguished it *pro tanto*, or was to be held and enjoyed by the holders thereof, as the interest paid on a debt due by the petitioner, leaving the amount of said certificates, as the principal of their debt, still due and standing upon the same footing as the coupons which were thus funded, and so in connection with said outstanding coupons for $30,870, constituting, in the language of the decision, the oldest overdue and unpaid coupons.

Commonwealth of Virginia *vs.* Chesapeake & Ohio Canal Co., *et al.*

The petition further showed that conflicting views were maintained by the said certificate holders and by the holders of said coupons not funded, and by holders of subsequently accrued coupons upon these questions, which the petititioner was advised it ought not to undertake to decide, and that before ordering any further payment, it should present the fact to the Circuit Court, to the end that its action in the premises might be in all respects in conformity with the aforesaid decision of the Court of Appeals, as properly construed and applied to the facts of the case.

The State of Maryland answered the petition, admitting the facts as therein set forth to be truly stated, but averred that in its answer to the original bill, it expressly denied the validity of the certificate for $35,400, issued to the Commonwealth of Virginia, as set forth in the bill, so that the question was in issue before the Court, and the views expressed in its opinion clearly disposed of all said certificates of indebtedness, as creating only a general indebtedness of the canal company, not entitling the holders to any priority over the liens of the State of Maryland; the answer further averred that the money paid for interest on said certificates of indebtedness by the company, was paid in error and ought to be accounted for, and rightly applied in the settlement of coupons then held by the parties who received the erroneous payments.

John S. Gittings and the Chesapeake Bank, adopted the answer of the State of Maryland, and insisted upon the same defences.

The Commonwealth of Virginia likewise answered and claimed that the certificate for $35,400 held by it, represented the coupons for the four half years, for the funding of which it was given; that by the surrender of the coupons, which as guarantor it had redeemed, and the acceptance of said certificate, it neither waived, nor intended to waive any of the legal rights to which it would have been entitled as the holder of the coupons themselves; that the interest which from time to

time was paid on the certificates, issued by the canal company was honestly and fairly due, and the certificate holders could not now lawfully be required to account for or repay it, at the instance of subsequent coupon holders or of the State of Maryland, who stood by, and without objection permitted such payment to be made; and that accordingly, in the distribution of the net revenues of the company, said certificates stood in the place of the coupons for the four half years of July, 1852, January and July, 1853, and January, 1854, which they represented, and were entitled to be paid *pari passu* with them, without abatement or deduction for the amount of said interest; the respondent prayed an order accordingly.

The Court (PINKNEY, J.) passed a *pro forma* decree directing the Canal company to apply its net revenues to the payment of the outstanding over due coupons upon the preferred bonds, in the order of seniority, including *pari passu* with others, the coupons paid and held by Virginia, but to exclude and disregard altogether in such application, the certificates of indebtedness issued by the company under the resolution of July 29th, 1853; the decree also declared that the holders of said certificates were general creditors of the canal company, not secured by the Act of 1844, ch. 281, and the mortgage to the trustees executed in pursuance of said Act.

From this decree the present appeal was taken.

The cause was argued before BARTOL, C. J., STEWART, BRENT, ALVEY and ROBINSON, J.

*John P. Poe,* for the appellant, argued,

That inasmuch as the facts demonstrate that the coupon holders did not design to surrender the protection of their lien upon the tolls and revenues, the law will not give such an unjust effect to the transaction. *Md. & N. Y. Coal Co. vs. Wingert,* 8 *Gill,* 170; 1 *Hilliard on Mortgages,* 535; *Walker vs. Stone,* 20 *Md.,* 198; *Brawner vs. Watkins,* 28 *Md.,* 226.

That assuming the coupons and the certificates representing them did not, as against subsequent lienors, bear interest, they did bear interest against the company—and that such interest having been once voluntarily paid by the company, it could not be recovered, either at the suit of the company, or of any other party. *Virginia vs. The Chesa. and Ohio Canal Co.*, 33 *Md.*, 548; *Lester vs. The Mayor &c.*, 28 *Md.*, 418.

Hence, if it could not be thus recovered, it cannot now be retained or deducted from the certificates, as a payment *pro tanto*, upon account of *principal*—and that the decision of this Court, even if adhered to, declaring that the coupons do not bear interest against the State, is merely a guide for the *future*, and cannot, as to past and closed transactions, have the effect of unsettling the above well settled rule of law, with reference to voluntary payments, and the rights of the parties thereunder.

*Frederick W. Brune*, for the Chesapeake and Ohio Canal Company,

Did not seek a reversal of the decree appealed from, but submitted the main questions involved therein to the decision of the Court, upon the arguments of counsel for the certificate holders on one side, and for the holders of unfunded coupons, and the State of Maryland on the other.

But in case the Court should be of opinion, that the certificate holders, by surrendering the coupons, in lieu of which they accepted certificates, did not release said coupons, and their right to claim under them, and that they are now equitably entitled to be paid *pari passu* with the outstanding coupons of the same date as those which they surrendered, it was contended that in that event such certificate holders thus claiming in right of these coupons—should be charged with the interest paid on such certificates from April, 1853, to April, 1857, and from April, 1857 to April, 1867, together with interest on such payments, as so much money paid on account of said coupons.

That any other view would work great inequality and injustice among the bond holders, for according to the previous decision, this Court holds that the holders of coupons are not entitled to claim interest on their coupons, and if the Court should now allow the certificates to be paid without crediting the sums already paid on them as interest, the holders of certificates will, by surrendering their coupons, have acquired a right to receive interest, to which, if they had retained their coupons, they would not have been entitled.

The Canal company also submitted whether the certificate holders, instead of being allowed to claim any further dividend on their certificates or the coupons they represent, should not be charged with the excess, in the payments received by them, and interest thereon, beyond the principal of the coupons surrendered by them respectively—such excess to be charged against them as payments on subsequently accruing coupons.

*Isaac D. Jones,* for the State of Maryland, submitted .

That the views expressed in the former opinion by this Court in deciding against the Selden & Withers' claim, apply equally, in principle, to the certificates of indebtedness for coupons surrendered. That said coupons were as effectually paid by the acceptances of the certificates under the seal of the company, bearing interest semi-annually, as were those surrendered by Selden, Withers & Co., because said certificates and acceptance and surrender worked an extinguishment of the coupon debt. *Moale vs. Hollins,* 11 *G. & J.,* 14.

That the State being a sovereign, the rule of *laches* is not applicable to it, in the consideration of its rights as a sovereign, and a creditor of the Canal company; that although as a *stockholder* in said company, it has only the rights and liabilities of other stockholders; yet as a *creditor* it has all the rights which appertain to a sovereign.

That in addition to the affirmance of the order appealed from in this case, this Court ought to direct, that in the pay-

ment of the coupons paid by Virginia as guarantor, and now held by her, (excluding those once paid by Selden, Withers & Co., and delivered up to the company, and afterwards wrongfully re-delivered to Selden, Withers & Co., and by them wrongfully delivered to Virginia, with the certificates or bonds for the money borrowed and applied to their payment and redemption;) the Canal company shall be credited thereon with the sum of $22,000, or whatever the exact sum may be shown to have been paid, in August, 1867, to Virginia; and with the further sum of $58,435, paid by said company to Virginia, on 10th December, 1869.

*George H. Williams,* for John S. Gittings, the Chesapeake Bank, and others,

Adopted the views presented in behalf of the State of Maryland.

BARTOL, C. J., delivered the opinion of the Court.

The object of the petition filed in this case by the Canal company, is to obtain the judgment of this Court upon certain questions which were not distinctly decided upon the former appeal, in order that the respective rights of the appellant and other creditors may be definitely ascertained, and the company may appropriate the funds now in its hands, and hereafter to accrue, in accordance with the just rights and priorities of its several creditors.

There are two distinct questions presented by this appeal, which will be disposed of in their order.

1st. What are the rights of the appellant and other holders of the certificates of indebtedness issued by the Canal company under the resolution of the board, passed on the 29th day of July, 1853?

The circumstances under which they were issued are fully stated in the petition of the company and need not be here repeated, except to say that they represent the aggregate amount of coupons for interest upon preferred bonds issued

under the Act of 1844, ch. 281; and which coupons fell due on the 1st of July, 1852, 1st of January, 1853, 1st of July, 1853, and 1st of January, 1854.

The appellant contends that the holders of such certificates are entitled to the same liens and priorities for their payment, as if they held the original coupons. On the other hand it is contended by the appellees that the effect of surrendering the coupons and accepting in lieu thereof the certificates of indebtedness, was to destroy the liens and priorities before held under the Act of 1844; and that the certificates are mere contracts of the company for the payment of money unsecured by any lien upon the net tolls and revenues; and not entitled to any priority whatsoever in the distribution of the fund. In support of this position it has been argued that the question was so decided upon the former appeal, 32 *Md.*, 501; in which it was held that the appellant, as assignee of Selden, Withers & Co., occupied the position, in respect to that claim, of a contract creditor only; and was entitled to no lien or priority whatever. But an examination of the opinion of this Court will show that the cases are not analogous, and that the question here presented was not involved in the decision of the rights of the appellant as assignee of Selden, Withers & Co. Our judgment in that case rested not upon the legal effect of the acceptance of certificates of indebtedness in lieu of the interest coupons, but upon the distinct ground that the transaction between Selden, Withers & Co. and the Canal company was a loan of money by the former to the latter, for the purpose of enabling the company to pay the interest upon its bonds, and when so applied the debt for interest was cancelled. The Court say, on page 545: " *The money so applied was in fact the money of the company, borrowed for that purpose.*" The consequence of this decision followed inevitably that Selden, Withers & Co., or their assignee, could not claim to be subrogated to the rights of the original bond holder; because the debt *pro tanto* had been discharged by the company; and so Selden, Withers & Co.

Commonwealth of Virginia *vs.* Chesapeake & Ohio Canal Co., *et al.*

never in fact or in law occupied the position of holders of the preferred bonds of the company secured by liens and entitled to priorities as such. Here a very different case is presented. The appellant as holder of preferred bonds was entitled to the liens and priorities for the principal and interest thereon, secured by the Act of 1844, ch. 281, and expressed in the body of the bonds. For convenience the interest payable semi-annually, was evidenced also by notes or certificates called " *coupons*" annexed to the bonds.

Under the resolution of the 29th day of July, 1853, the appellant surrendered certain coupons representing interest due on the bonds, and accepted in lieu thereof certificates of indebtedness from the company purporting to bear interest.

It is contended that the effect of this transaction was to destroy the lien and priority before held by the appellant, in respect to the funded interest represented by the certificate of indebtedness; because it is alleged that the certificate being under seal is a security of a higher nature than the coupons, which were mere parol contracts, and operated as a payment or extinguishment of the latter, and thus destroyed the pre-existing lien of the creditor.

A conclusive answer to this argument is found in the fact that by the terms of the bonds themselves, and by force of the Act of 1844, the lien and priority were secured to the bond holder, both for the principal sum expressed in the bond and the semi-annual interest thereon; so that by accepting the certificates of indebtedness, the bond holder in fact received a security of no higher nature than he before held; there was therefore no merger or extinguishment of the pre-existing debt for interest by operation of law. The transaction in itself could not operate as a payment of the debt, in the absence of proof of some agreement between the parties that the certificates were accepted as payment. It has been argued that the acceptance of the certificate operated as payment of the interest funded, because by its terms the coupon holder obtained the obligation of the company to pay interest

upon interest, which it is alleged created a new and different contract between the parties. This argument we think, like the other, is based upon erroneous premises. There was in fact no change in the terms of the contract.

It was expressly decided on the former appeal, (32 Md., 547, 548,) that as between the bond holder and the company, the former would be legally entitled to interest upon the coupons from the time of their maturity. The certificate of indebtedness merely secures the same thing in express terms: it gives no new rights to the creditor, nor does it impose upon the company any greater obligation than before existed.

It is manifest when we consider the facts and circumstances accompanying the transaction, as showing the real intention of the parties, that neither party contemplated such consequences from the transaction as have been contended for by the appellees.

It was clearly not the intention of the coupon holders to waive or surrender their lien upon the tolls and revenues; and as they have done nothing which either expressly, or by operation of law works such surrender, it follows that their lien remains to the same extent as before.

In our opinion the holders of the certificates of indebtedness are entitled to the same lien and priorities for their payment, as they would have for the payment of the original coupons which they represent.

This priority exists however only to the extent of the principal sum named in the certificate, and does not include the interest thereon. This results from the terms of the Act of 1844, ch. 281, which was construed by this Court on the former appeal; in which it was decided that the waiver of the State's priority of lien by that Act in favor of the holders of the bonds thereby authorized, extends only to the principal sum secured by the bonds, with simple interest thereon; and does not include interest on interest. (32 Md., 547 to 550.) The application of that rule to the holders of the certificates of indebtedness places them in the same position as if they

Commonwealth of Virginia *vs.* Chesapeake & Ohio Canal Co , *et al.*

continued to hold the original coupons for which the certificates were substituted.

This brings us to the consideration of the second question presented by this appeal which arises in this way. It appears that the Canal company has heretofore paid out of its net revenues certain sums of money for and on account of interest upon the certificates of indebtedness, which accrued from April, 1853, to April, 1867; and the question arises as to the effect of such payments. Are the certificate holders entitled to retain the money so paid? or are they bound to account for it as for money erroneously received? If this question were one exclusively between them and the Canal company, there would be no doubt of the correctness of the position assumed by the appellant's counsel on this branch of the case: but the rights and priorities of other lien creditors are involved; these could not be defeated or impaired by the act of the Canal company, which occupies the position of a stakeholder, receiver or trustee holding the common fund upon which the liens exist. In such case if there has been a misapplication of the fund in favor of one creditor, which defeats or impairs the equitable rights and priorities of others, these are entitled to demand that the money be re-paid, or applied according to the equitable rights and priorities of the parties. Under the decision rendered by this Court on the former appeal, to which we have before referred, it is clear that all payments made by the Canal company on account of interest upon the certificates of indebtedness, though made honestly and in good faith, were made erroneously, and so far as the appellees are concerned, was a misapplication of the fund: inasmuch as the holders of the certificates were not entitled to any priority of payment of interest upon them, any more than they would have been upon the coupons for which the certificates were substituted. In order therefore to protect the rights of other lien creditors, and to secure justice and equality among the bond holders, the appellees are in our opinion entitled to insist that the money received

Commonwealth of Virginia *vs.* Chesapeake & Ohio Canal Co., *et al.*

by the appellant and others, on account of interest upon the certificates of indebtedness, shall be applied in extinguishment of the principal sums therein named—thus placing the holders of the certificates on the same footing as the holders of coupons outstanding and unfunded.

In making this application of the payments we do not think that interest ought to be charged upon the moneys so, erroneously paid. The holders of the certificates were entitled to a lien and priority for the payment of the principal sums named in them, and were entitled to apply in that way any moneys received from the Canal company. By making that application now, the just rights of the appellees and other lien creditors are protected. It would be in our judgment inequitable to charge interest upon the sums so paid—and we accordingly decide that no such interest is chargeable.

We will pass a decree reversing the *pro forma* decree of the Circuit Court from which this appeal was taken, and remanding the cause for further proceedings in conformity with the opinion of this Court; and will direct the costs in this Court and in the Court below to be paid out of the fund.

*Reversed and remanded.*

(Decided 21st December, 1871.)