597 A.2d 427

**Danney McConney FORBES**

**v.**

**STATE of Maryland.**

**No. 39, Sept. Term, 1990.**

Court of Appeals of Maryland.

Oct. 28, 1991.

Paul M. Weiss, Baltimore, for appellant.

Diane E. Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE and CHASANOW, JJ.

ELDRIDGE, Judge.

 This case presents the question of whether one who unintentionally causes a death as a result of the grossly negligent operation of a motor vehicle may be convicted of common law involuntary manslaughter. We shall reaffirm the holding in *State v. Gibson*, 254 Md. 399, 254 A.2d 691 (1969), affirming *State v. Gibson*, 4 Md.App. 236, 242 A.2d 575 (1968), that common law involuntary manslaughter does not encompass such conduct. The conduct may, however, be the basis for a conviction of statutory manslaughter by automobile, Maryland Code (1957, 1987 Repl.Vol., 1991 Cum.Supp.), Art. 27, § 388.

The pertinent facts of this case are as follows. After an argument between the defendant, Danney Forbes, and the victim, George Michael, Forbes got into his automobile which was in front of Michael's house. According to the State's witnesses, Michael was standing in the street in front of Forbes's car when Forbes "revved" his engine, "spun his tires" and then drove his car toward Michael. The State's witnesses testified that Forbes made no attempt to go around Michael but, instead, drove straight at the victim and struck him. A defense witness, however, testified that Michael was standing to the side of Forbes's automobile, that when Forbes began to drive, Michael stepped forward, that Forbes swerved in an attempt to avoid Michael, but that Michael leaped up on the hood of Forbes's car. The witness further stated that Michael rolled across the hood toward the back of the car and then fell off of the car. Michael subsequently died from head injuries received in the collision.

Forbes was charged with murder in a single count indictment filed in the Circuit Court for Baltimore County. The charge was in the statutory form which includes common law manslaughter. *See* Art. 27, § 616. Forbes was not, however, charged with the statutory offense of manslaughter by automobile under Art. 27, § 388.[1]

---

**1.** Maryland Code (1957, 1987 Repl.Vol., 1991 Cum.Supp.), Art. 27, § 388, provides as follows:

"**§ 388. Manslaughter by automobile, vessel, etc.; charging documents.**

"Every person causing the death of another as the result of the driving, operation or control of an automobile, motor vehicle, locomotive, engine, car, streetcar, train, vessel, or other vehicle in a grossly negligent manner, shall be guilty of a misdemeanor to be known as 'manslaughter by automobile, motor vehicle, locomotive, engine, car, streetcar, train, vessel, or other vehicle,' and the person so convicted shall be sentenced to jail or the house of correction for not more than 10 years, or be fined not more than $5,000 or be both fined and imprisoned.

"In any indictment or other charging document for manslaughter by automobile, motor vehicle, locomotive, engine, car, streetcar, train, vessel, or other vehicle, it shall not be necessary to set forth the manner and means of death. It shall be sufficient to use a

Forbes elected to be tried by a jury. As previously indicated, the State's evidence at the trial supported the State's position that Forbes intended to strike the victim with his car, whereas the testimony of a defense witness tended to support the defendant's contention that he did not intentionally hit the victim.

During closing argument, defense counsel argued to the jury that there was no intent to kill and "that what occurred was negligence." Defense counsel then attempted to read to the jury Art. 27, § 388, and to argue that § 388 "exactly addresses the facts of this case and he [the defendant] was not charged" with violating § 388. The prosecuting attorney objected to the argument, and the circuit court would not permit defense counsel to make the argument to the jury, even though defense counsel pointed out: "Your Honor, there is abundant case law that says I am allowed to argue that Mr. Forbes is guilty of a crime the State has not charged."

The circuit court instructed the jury on first degree murder, second degree murder, and common law manslaughter including both voluntary manslaughter and involuntary manslaughter. In addition, the jury was given a verdict sheet listing separately (1) murder in the first degree, (2) murder in the second degree, (3) voluntary manslaughter, and (4) involuntary manslaughter.

The jury determined that Forbes was not guilty of murder in the first or second degree and was not guilty of voluntary manslaughter. The jury, however, found him guilty of involuntary manslaughter. The defendant moved for a judgment of acquittal or, in the alternative, a new trial, arguing, *inter alia*, that "the jury's verdict is contrary

---

formula substantially to the following effect: 'That A–B on the ........ day of ........, nineteen hundred and .. at the County (City) aforesaid, unlawfully, in a grossly negligent manner did kill and slay C–D.'"

At the time of the alleged crime in the present case, the maximum penalty under § 388 was five years imprisonment and a fine of $1,000.00.

to the legislature's intent in enacting the statutory offense of Manslaughter By Automobile." The defendant specifically relied upon *State v. Gibson, supra.* The motion was denied, and Forbes was sentenced to ten years imprisonment.

Forbes appealed, and this Court issued a writ of certiorari prior to argument in the Court of Special Appeals. Forbes challenges his conviction on two grounds. First, he argues that, in light of the enactment of the manslaughter by automobile statute (Art. 27, § 388), common law involuntary manslaughter does not encompass the conduct found by the jury to exist in this case, namely causing a death by driving an automobile in a grossly negligent manner but without any intent to kill. Second, Forbes contends that the circuit court erred in not allowing him to mention Art. 27, § 388, and to argue that if Forbes was guilty of an offense, he was guilty under § 388 which was not charged.

Since we agree with Forbes's first argument, and since a reversal on that ground will preclude a re-trial, we shall not dwell upon the second argument. We note, however, that the defendant's second argument appears to be correct under the principles set forth in *Hawkins v. State,* 291 Md. 688, 693–695, 436 A.2d 900, 902–904 (1981).

Prior to the enactment of Art. 27, § 388, by Ch. 414 of the Acts of 1941, the conduct which the jury found to exist in this case would have constituted an offense covered by the indictment, *i.e.* common law involuntary manslaughter. *See Neusbaum v. State,* 156 Md. 149, 143 A. 872 (1928). Nevertheless, as made clear in *State v. Gibson, supra,* 254 Md. 399, 254 A.2d 691, affirming and adopting the opinion in *State v. Gibson, supra,* 4 Md.App. 236, 242 A.2d 575, by the enactment of Art. 27, § 388, the General Assembly repealed that portion of the crime of common law involuntary manslaughter dealing with unintended homicides resulting from the operation of motor vehicles.

In *State v. Gibson,* the defendant was charged in a multicount indictment with homicide resulting from a motor

vehicle collision. The first four counts charged the defendant with common law involuntary manslaughter based on his driving a motor vehicle in violation of the motor vehicle laws and the laws relating to alcoholic beverages. The remaining counts related to other alleged offenses. The defendant moved to dismiss the first four counts, arguing that, in light of Art. 27, § 388, the offense of common law manslaughter did not encompass the defendant's actions. The Circuit Court for Baltimore County granted the defendant's motion to dismiss the first four counts. The State then nol prossed the remaining counts and took an appeal.

 The Court of Special Appeals in *State v. Gibson* affirmed the dismissal of the common law involuntary manslaughter counts. The intermediate appellate court, in an opinion by Chief Judge Murphy, held that common law involuntary manslaughter "no longer has any application to those cases where the homicide results unintentionally from the operation of a motor vehicle" and that "such cases can only be prosecuted under [Art. 27,] Section 388." *State v. Gibson, supra,* 4 Md.App. at 245, 242 A.2d at 581. In reaching the conclusion that unintentional motor vehicle homicides could not be prosecuted as common law involuntary manslaughter, the Court of Special Appeals pointed out inherent inconsistences in a contrary holding. For example, if it were concluded that § 388 did not remove unintentional motor vehicle homicides from common law involuntary manslaughter, an individual could be convicted of both crimes. Common law involuntary manslaughter carries a ten year maximum term of imprisonment and is a felony, whereas § 388 then provided for a three year maximum term of imprisonment and is a misdemeanor. Nevertheless, both offenses require the same proof of negligence, *i.e.,* gross negligence.[2] Therefore, prosecutors would never utilize § 388 since the same proof would lead to a conviction under

---

2. It is settled that the negligence necessary to support a conviction for common law involuntary manslaughter must be gross such as manifests a wanton or reckless disregard of human life. *Palmer v. State,* 223 Md. 341, 343, 164 A.2d 467, 469 (1960). "It is equally well settled

the common law involuntary manslaughter offense. This would render § 388 nugatory. *See also* Comment, *The Other Tragedy of Vehicular Related Deaths in Ohio's Criminal Statutes*, 16 U. Dayton L.Rev. 183, 196–205 (1990). The Court of Special Appeals concluded in *Gibson* as follows (4 Md.App. at 247, 242 A.2d at 581–582):

"We conclude, therefore, that in enacting Section 388, the Legislature intended to deal with an entire subject matter—unintended homicides resulting from the operation of a motor vehicle—and that the common law crime of involuntary manslaughter, when based on homicides so occurring, is in conflict with the statute and must yield to it to the extent of the inconsistency. See *Lutz v. State*, 167 Md. 12 [172 A. 354]. We observe in this connection that in enacting Section 388, the Legislature expressly provided (Section 2 of Chapter 414 of the Acts of 1941) that 'all acts inconsistent with the provisions of this Act are repealed to the extent of such inconsistency.' While the crime of manslaughter is not defined by statute in Maryland, it is, as heretofore stated, recognized by Section 387 of Article 27 and provision made for its punishment. The rule is well settled that 'where a statute prohibits a particular act, and imposes a penalty for doing it, and a subsequent statute imposes a different penalty for the same, or practically the same, offense, the later statute repeals the earlier one, and this is true whether the penalty is increased or diminished.' "

This Court granted the State's petition for a writ of certiorari in *State v. Gibson* "[s]ince the matter was of public importance in the administration of the criminal law," and we

"concluded that the result reached by the Court of Special Appeals was correct for the reasons given in the careful

---

that the Legislature, in enacting Section 388, ... intended to adopt this same standard of gross negligence ... to support a conviction for this statutory offense." *State v. Gibson, supra,* 4 Md.App. at 242–243, 242 A.2d at 579. *See also Connor v. State,* 225 Md. 543, 171 A.2d 699, *cert. denied,* 368 U.S. 906, 82 S.Ct. 186, 7 L.Ed.2d 100 (1961).

and thorough opinion of Chief Judge Murphy of the Court, in *State v. Gibson,* 4 Md.App. 236, 242 A.2d 575, which we approve." 254 Md. at 401, 254 A.2d at 692.

No sound reasons have been advanced in the present case for departing from the holding in *State v. Gibson.* Moreover, Art. 27, § 388, has been reenacted with amendments on five occasions since it was interpreted in the *Gibson* case,[3] and the General Assembly has not changed the statute so as to modify the *Gibson* interpretation. As recently explained in *Nationwide v. USF & G,* 314 Md. 131, 143–144, 550 A.2d 69, 75 (1988),

"[u]nder these circumstances, a court should be most reluctant to overrule its prior interpretation of that statutory language. The controlling principle was explained in *Williams v. State,* 292 Md. 201, 210, 438 A.2d 1301 (1981), as follows:

'The General Assembly is presumed to be aware of this Court's interpretation of its enactments and, if such interpretation is not legislatively overturned, to have acquiesced in that interpretation. *Harden v. Mass Transit Adm.,* 277 Md. 399, 406, 354 A.2d 817 (1976). This presumption is particularly strong whenever, after statutory language has been interpreted by this Court, the Legislature re-enacts the statute without changing in substance the language at issue. *Harbor Island Marina v. Calvert Co.,* 286 Md. 303, 322–323, 407 A.2d 738 (1979); *Director v. Cash,* 269 Md. 331, 345, 305 A.2d 833 (1973) *cert. denied sub nom. Vucci v. Boslow, Institution Director,* 414 U.S. 1136, 94 S.Ct. 881, 38 L.Ed.2d 762 (1974); *Macke Co. v. St. Dep't of Assess. & T.,* 264 Md. 121, 132–133, 285 A.2d 593 (1972); *Stack v. Marney,* 252 Md. 43, 49, 248 A.2d 880 (1969). Under these circumstances, it is particularly inappropriate to depart from the principle of stare decisis and overrule our prior interpretation of the

---

**3.** *See* Ch. 6, § 2, of the Acts of 1990; Ch. 737 of the Acts of 1989; Ch. 515 of the Acts of 1989; Ch. 92 of the Acts of 1982; Ch. 181, § 28, of the Acts of 1972.

statute. *White v. Prince George's Co.*, 282 Md. 641, 657–658, 387 A.2d 260 (1978). *See also Flood v. Kuhn*, 407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972).' *Accord: Frank v. Storer*, 308 Md. 194, 203, 517 A.2d 1098 (1986); *Farmers & Merchants Bank v. Schlossberg*, 306 Md. 48, 60, 507 A.2d 172 (1986); *Foster v. State*, 304 Md. 439, 479–480, n. 20, 499 A.2d 1236 (1985), *cert. denied*, 478 U.S. 1010, 106 S.Ct. 3310, 92 L.Ed.2d 723 (1986); *Calhoun v. State*, 299 Md. 1, 11, 472 A.2d 436 (1984)."

■ The State seeks to distinguish the present case from *Gibson* by emphasizing the State's evidence in this case which indicated that Forbes used his automobile as a "weapon" and that he intentionally drove his automobile at the victim. The problem with this attempted distinction of *Gibson* is that the jury rejected the State's theory that this was an intentional homicide. The jury's verdict, in light of the trial court's instructions, makes it clear that the jury found that the defendant did not intend to kill the victim but was, instead, grossly negligent. *Cf. Schochet v. State*, 320 Md. 714, 724–725, 580 A.2d 176, 181 (1990).[4]

Consequently, *State v. Gibson, supra*, requires a reversal of Forbes's common law involuntary manslaughter conviction.

---

4. In addition, while not making a preservation contention as a separate argument, the State suggests that Forbes did not raise the *Gibson* issue in a timely manner because he did not file a pretrial motion to dismiss, did not move for a judgment of acquittal at the close of the evidence, did not object to the instruction on common law involuntary manslaughter, and did not raise the issue until the jury rendered its verdict of guilty of common law involuntary manslaughter. The defendant, in response, states (Reply Brief, p. 2):

"Appellee suggests that the [*Gibson*] issue should have been raised prior to trial through a motion to dismiss. If the State had chosen to charge Appellant solely with one count of common law involuntary manslaughter, this argument might have some merit. The State, however, chose to indict Appellant with one count of common law first degree murder, evidently believing that the evidence would show an intentional killing by Mr. Forbes. Had the jury come back with a guilty verdict on either murder in the first or second degree

JUDGMENT OF THE CIRCUIT COURT FOR BALTI-
MORE COUNTY REVERSED. BALTIMORE COUNTY
TO PAY COSTS.

or voluntary manslaughter, the [*Gibson*] argument would have no merit."

The defendant also asserts that "the only way [the defendant] could place the issue of his intent before the jury was through an instruction on common law involuntary manslaughter ..." (*id.* at p. 4). The defendant contends that the issue "only became ripe after the jury came back with a verdict of guilty of involuntary manslaughter." (*Id.* at p. 2).

In this case, we need not explore the question of when the defen-. dant should have first raised the *Gibson* issue in the trial court. The issue is not one of sufficiency of the evidence. The State's evidence was fully sufficient to have convicted the defendant of murder or voluntary manslaughter. The evidence was also sufficient to have convicted the defendant of manslaughter by automobile if the indictment had charged a violation of Art. 27, § 388. The problem in this case is that, insofar as the State was alternatively accusing the defendant of an unintentional homicide by automobile, such offense was not charged in the indictment. Moreover, the acts which the jury found were committed by the defendant do not constitute any crime charged in the indictment and do not constitute the crime (common law involuntary manslaughter) of which he was convicted. Under these circumstances, the issue may even be raised for the first time at the appellate level. *See, e.g., State v. Kramer,* 318 Md. 576, 582–583, 569 A.2d 674, 677 (1990). *See also Williams v. State,* 302 Md. 787, 791–792, 490 A.2d 1277, 1279 (1985).