651 A.2d 856

**Peggy Sue GRILL**

v.

**STATE of Maryland.**

**No. 33, Sept. Term, 1994.**

Court of Appeals of Maryland.

Jan. 10, 1995.

Margaret L. Lanier, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Gary E. Bair, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, BELL and RAKER, JJ., and McAULIFFE, (Ret., Specially Assigned), JJ.

MURPHY, Chief Judge.

This case involves a defendant who purchased a non-controlled substance from an undercover police officer, believing it to be a controlled dangerous substance (CDS), and whether that individual's conviction for a criminal attempt to possess actual CDS requires reversal.

## I

Peggy Sue Grill was charged in the Circuit Court for Carroll County (1) with unlawful possession of a controlled dangerous substance in violation of Maryland Code (1957, 1992 Repl.Vol.), Article 27, § 287 and (2) with a common law attempt to possess CDS, the penalty for which is prescribed by § 290 of that Article.[1] Grill was tried before the court, sitting without a jury, on a "not guilty statement of facts" to which she agreed. It revealed that on August 28, 1992, pursuant to a police investigation into drug trafficking, a man known as "Pistol" was arrested and his electronic pager was confiscated. An officer called one of the telephone numbers displayed on the pager and spoke with a woman who identified herself as Peggy and who asked for Pistol. The officer, posing as Pistol's associate, told her that he was responding to Pistol's calls. Grill told him that she wanted a twenty of "china white," known by the officer to be the street name for heroin. He set up a meeting with her to make the sale.

At the designated time and place, the officer met Grill and entered her car. He gave her a small blue Ziploc baggy containing white powder packaged to look like heroin in exchange for a twenty dollar bill. Grill believed the substance to be heroin. The officer left the car and Grill drove away, only to be stopped shortly thereafter, arrested, and her car searched. The bag of look-alike heroin was recovered from under her seat.

Relying upon the doctrine of legal impossibility, Grill claimed at the trial that she could not be found guilty either of unlawful possession of CDS or of a criminal attempt to possess CDS. After the State nol prossed the unlawful possession charge, the court convicted Grill of the common law attempt to

---

1. Section 290 reads:

"Except as provided otherwise under this subheading, any person who attempts, endeavors or conspires to commit any offense defined in this subheading is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt, endeavor or conspiracy."

possess CDS. After she was sentenced to a suspended one-year term of incarceration, and placed on five years' supervised probation, she appealed to the Court of Special Appeals, maintaining that the evidence presented at her trial was legally insufficient to sustain her criminal attempt conviction. The intermediate appellate court affirmed the conviction in an unreported opinion. It found no merit in Grill's argument that as the item she actually purchased was not CDS, her defense of legal impossibility necessarily foreclosed her conviction. The court held that the evidence in the case presented a case of factual, not legal, impossibility and hence did not preclude a conviction on the attempt charge.

Grill filed a petition for certiorari, presenting as the sole question for review whether a defendant "who purchases a noncontrolled substance, believing it to be a controlled dangerous substance [is] guilty of an attempt to possess a controlled dangerous substance...." We granted certiorari to consider the significant issue raised by the petition.

## II

To be convicted of the common law crime of attempt, a defendant must have a specific intent to commit a particular offense and must perform some overt act in furtherance of that intent that goes beyond mere preparation. *State v. Earp,* 319 Md. 156, 162–63, 571 A.2d 1227 (1990). More specifically, "[a] person is guilty of a criminal attempt when, with intent to commit a crime, the person engages in conduct which constitutes a substantial step toward the commission of that crime whether or not his intention is accomplished." *Townes v. State,* 314 Md. 71, 75, 548 A.2d 832 (1988). Failure to consummate the intended crime is not an essential element of an attempt; thus, if an accused is not found guilty of committing the intended crime, a conviction for attempting to do so may still be obtained. *Id.* at 76, 548 A.2d 832. *See also Lightfoot v. State,* 278 Md. 231, 238, 360 A.2d 426 (1976); *Franczkowski v. State,* 239 Md. 126, 127–28, 210 A.2d 504 (1964).

■ The evidence is clear that Grill specifically intended to acquire CDS and went well beyond mere preparation in furtherance of that intention when she purchased what she believed to be heroin. She nevertheless renews her argument before us that since what she actually bought was not heroin, her defense of legal impossibility should have been recognized and applied to preclude her criminal attempt conviction.

According to Grill, the defense of legal impossibility, encompasses "the situation in which the defendant did everything [she] intended to do but yet had not committed the completed crime." 2 Wayne R. LaF'ave and Austin W. Scott, Jr., *Substantive Criminal Law* § 6.3, at 38–39 (1986). She relies strongly upon the formulation of the legal impossibility defense articulated in *United States v. Berrigan*, 482 F.2d 171, 188 (3d Cir.1973), which states:

> "Legal impossibility is said to occur where the intended acts, even if completed, would not amount to a crime. Thus, legal impossibility would apply to those circumstances where (1) the motive, desire and expectation is to perform an act in violation of the law; (2) there is intention to perform a physical act; (3) there is a performance of the intended physical act; and (4) the consequence resulting from the intended act does not amount to a crime."

In this same vein, Grill points to the following statement in Clark & Marshall, *A Treatise on the Law of Crimes* § 4.12, at 255–57 (7th ed. 1967): "[s]ince criminal intent unaccompanied by a criminal act is not punishable, a person who intends a particular crime, and believes he is committing it, is not criminally liable for that belief, if his acts do not in fact amount to a crime." Grill draws attention to a number of cases where the defendant was not convicted of a criminal attempt because the defense of legal impossibility was successfully asserted. *See, e.g., People v. Jaffe*, 185 N.Y. 497, 78 N.E. 169 (1906), *reh. denied*, 186 N.Y. 560, 79 N.E. 1113 (1906) (not criminal attempt to receive stolen goods when, unknown to defendant, the property in question had been returned to its rightful owner before the defendant obtained it); *State v. Guffey*, 262 S.W.2d 152, 155–56 (Mo.Ct.App.1953) (not criminal

attempt to take a deer out of season when defendant shot at a stuffed deer believing it to be alive); *State v. Porter*, 125 Mont. 503, 242 P.2d 984, 987 (1952) (not criminal attempt to bribe a juror when defendant offered bribe to someone he mistakenly believed to be a juror); *People v. Teal*, 196 N.Y. 372, 89 N.E. 1086, 1087–88 (1909) (not criminal attempt to induce a woman to commit perjury when the subject matter of her testimony was totally irrelevant to the proceeding).

We have never decided whether, in Maryland, legal impossibility is a defense to a criminal attempt charge and we need not do so in this case. For even assuming, arguendo, that legal impossibility may provide a defense to crime in some instances, the question before us is whether the elements of a criminal attempt were established by the evidence adduced at the trial. That Grill was unable to accomplish what she intended, i.e., to possess heroin, because of facts unknown to her, does not preclude her conviction for criminally attempting to possess unlawful CDS. As the Court of Special Appeals held, factual impossibility is not a defense to a criminal attempt charge. LaFave and Scott, *supra*, § 6.3, at 38–39, characterize factual impossibility as "that in which the defendant is unable to accomplish what he intends because of some facts unknown to him." Rollins M. Perkins, *Criminal Law*, 2d ed. (1969) at 566, states that it would be "quite unreasonable to take the view that any actual barrier to success, however much undetected at the moment, would prevent legal recognition of an attempt to commit a crime regardless of other circumstances." And at page 567, the author points to cases holding that where the necessary intent to commit the crime exists, and the act has some adaptation to accomplish the particular thing intended, it need be only apparent; and thus where the impediment is of a nature to be wholly unknown to the offender, who used appropriate means, the criminal attempt is committed. More simply, Perkins adopts the view that the defendant cannot protect himself from responsibility by showing that, by reason of some fact unknown to him at the time of his criminal attempt, it could not be fully carried into effect in that particular instance. *Id.*

at 567. Otherwise stated, "the mere fact that the effort is bound to fail for some reason unknown to the actor at the time, does not prevent recognition of a criminal attempt." *Id.* at 568. The decided cases illuminate the proper application of these factual impossibility principles in criminal attempt proceedings. *See, e.g., People v. Fiegelman,* 33 Cal.App.2d 100, 91 P.2d 156 (1939) (attempting to pick an empty pocket); *State v. Damms,* 9 Wis.2d 183, 100 N.W.2d 592, 596–97 (1960) (attempting to kill someone with an unloaded weapon); *State v. Mitchell,* 170 Mo. 633, 71 S.W. 175, 177 (1902) (attempting to kill someone, but failing to do so because the intended victim was not where the defendant believed him to be); *Waters v. State,* 2 Md.App. 216, 234 A.2d 147 (1967), *cert. denied,* 259 Md. 737 (1970) (attempting to rape someone when impotent); *State v. Moretti,* 52 N.J. 182, 244 A.2d 499 (1968) (attempting to perform an abortion on a woman who was not pregnant).

Consistent with these "factual impossibility" cases, a rational factfinder could have concluded, as did the trial judge in this case, that Grill entertained a specific intent, coupled with an overt act in furtherance of that intent, to purchase actual CDS, failing only to effectuate her intention by a fact unknown to her, i.e., that what she purchased was not heroin but rather a noncontrolled "look-alike" substance. Applying the Maryland law to these facts, the trial judge properly concluded that Grill was guilty of a common law attempt to purchase actual CDS.

## II

Although not raised prior to or at trial, or on appeal to the Court of Special Appeals, Grill contends for the first time before us that the evidence was insufficient to support her common law attempt conviction on the ground that she should have been charged with purchasing "imitation" CDS under Article 27, § 287B(b), which makes it a misdemeanor for any person "to possess or purchase a noncontrolled substance that the person reasonably believes to be a controlled dangerous substance."

Maryland Rule 4–252 requires that a motion to establish a defect in the institution of the prosecution or in the charging document, other than its failure to show jurisdiction in the court or to charge an offense, is waived if not raised prior to trial. On its face, the charging document charged an offense which the circuit court was empowered to try—a common law attempt to possess CDS. Maryland Rule 8–131(a) provides that the issue of jurisdiction over the subject matter may be raised in and decided by the appellate court whether or not raised in and decided by the trial court. We do not view Grill's argument, however, as challenging the power of the circuit court to try her for a common law attempt to possess CDS, with or without regard to the provisions of § 287B. As we see it, her belated argument is simply that the prosecution more properly should have been brought under § 287B. We thus do not here consider whether the legislature, by enacting § 287B, intended to render nugatory prosecutions for common law attempts where imitation, rather than actual CDS, was the substance acquired. *See, e.g., Forbes v. State* 324 Md. 335, 597 A.2d 427 (1991); *State v. Gibson,* 4 Md.App. 236, 242 A.2d 575 (1968), *aff'd,* 254 Md. 399, 254 A.2d 691 (1969). Consequently, as that issue is not properly before us, we shall affirm the judgment in this case.

*JUDGMENT AFFIRMED WITH COSTS.*