739 A.2d 33

**STATE of Maryland**

v.

**Theresa M. NORTH.**

**No. 126, Sept. Term, 1998.**

Court of Appeals of Maryland.

Oct. 13, 1999.

Gary E. Bair, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on brief), Baltimore, for appellant.

Craig S. Garfield, Baltimore, for appellee.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW *, RAKER, WILNER and CATHELL, JJ.

---

* Chasanow, J., now retired, participated in the hearing and conference of this case while an active member of this Court but did not participate in the decisions and adoption of this opinion.

WILNER, Judge.

In *Grill v. State*, 337 Md. 91, 651 A.2d 856 (1995), we held that a person who purchases what he or she believes is a controlled dangerous substance, with the intent to purchase such a substance, but who receives instead a look-alike item that is not, in fact, a controlled dangerous substance, may be convicted of the common law crime of attempting to purchase a controlled dangerous substance. The principal defense raised by Ms. Grill, who purchased the item from an undercover police officer, was that of "legal impossibility"—that, because actual possession of a non-controlled dangerous substance is not a crime and because a criminal intent alone, unaccompanied by a criminal act, is not punishable, she incurred no criminal liability for merely intending to possess a substance that, under the circumstance, she never did or could possess.

We found it unnecessary to determine whether, under Maryland law, legal impossibility is a defense to a criminal attempt charge, for we concluded that, even if it was, the actual issue presented by the case was one of *factual* impossibility, not *legal* impossibility, and that *factual* impossibility is not a defense to a charge of attempt. We adopted the view expressed by Professor Perkins that a person may not escape responsibility by showing that, by reason of some fact unknown to him or her at the time of the criminal attempt, the person's intended scheme could not be fully carried into effect. *See id.* at 96, 651 A.2d at 858, citing ROLLINS M. PERKINS, CRIMINAL LAW, 2d ed. (1969) at 567. We thus concluded that Grill "entertained a specific intent, coupled with an overt act in furtherance of that intent, to purchase actual CDS, failing only to effectuate her intention by a fact unknown to her, i.e., that what she purchased was not heroin but rather a noncontrolled 'look-alike' substance," and that such conduct sufficed to establish a common law attempt to purchase actual CDS. *Id.* at 97, 651 A.2d at 859.

Ms. Grill raised a second issue before us. Noting the enactment in 1991 of Maryland Code, Article 27, § 287B,

making it unlawful for a person to possess or purchase a non-controlled substance that the person reasonably believes to be a controlled substance, she claimed that she should have been charged under that statute, rather than for attempting to purchase a controlled substance. We characterized the issue framed by her as whether, by enacting § 287B, the legislature "intended to render nugatory prosecutions for common law attempts where imitation, rather than actual CDS, was the substance acquired." *Id.* at 98, 651 A.2d at 859. Because that issue had not been raised in either the trial court or the Court of Special Appeals, however, we declined to address it.

This case squarely presents that issue. Much like Peggy Sue Grill, appellee, Theresa North, purchased from an undercover police officer, for $10, what she reasonably believed was a bag of heroin. In fact, the substance sold to her was not a controlled dangerous substance, but an imitation. When stopped moments later, she ate the bag, with the substance in it. North was arrested and charged with attempt to purchase a controlled dangerous substance. She moved to dismiss the charge, claiming that her conduct fell squarely within § 287B and that, by enacting that section to deal specifically with this kind of circumstance, the legislature implicitly repealed, at least to the extent of the overlap, the common law offense of attempting to possess a controlled dangerous substance. The court agreed and dismissed the charge. We assumed jurisdiction over the State's appeal before any proceedings in the Court of Special Appeals, and we shall reverse the judgment of the circuit court.

## DISCUSSION

As we indicated in *Grill,* the issue before us is one of legislative intent—whether, through its enactment of § 287B, the General Assembly intended to withdraw from the purview of the common law offense of attempt the conduct covered by the new statute. In *Robinson v. State,* 353 Md. 683, 728 A.2d 698 (1999), we held it to be "a generally accepted rule of law that statutes are not presumed to repeal the common law 'further than is expressly declared, and that a statute, made in

the affirmative without any negative expressed or implied, does not take away the common law,' " but we also observed that "[w]here a statute and the common law are in conflict, or where a statute deals with an entire subject-matter, the rule is otherwise, and the statute is generally construed as abrogating the common law as to that subject." *Id.* at 693, 728 A.2d at 702–03, quoting, in part, from *Lutz v. State*, 167 Md. 12, 15, 172 A. 354, 356 (1934), quoting, in turn, 25 R.C.L. 1054.

█ This view, generally disfavoring repeal of the common law by implication, has a long history in Maryland. In *Hooper v. Mayor & C.C. of Balto.*, 12 Md. 464, 475 (1859), we quoted with approval from DWARRIS ON STATUTES at 695 that "it is not to be presumed that the legislature intended to make any innovation upon the common law, further than the case absolutely required," but that "[t]he law rather infers that the act did *not* intend to make any alteration *other* than what is *specified*, and besides *what has been plainly pronounced.*" (Emphasis in original.) In *Anderson v. State*, 61 Md.App. 436, 449, 487 A.2d 294, 300 (1985), Judge Moylan explained the jurisprudential underpinning for that view, namely, the fact that, by Article 5 of the Declaration of Rights, the common law is Constitutionally guaranteed to the inhabitants of the State. Although that common law may be altered or repealed through statutes duly enacted by the General Assembly, given the Constitutional underpinning, its erosion is not lightly to be implied.

█ Under Maryland common law, the attempt to commit a crime is, itself, a separate misdemeanor. *Lane v. State*, 348 Md. 272, 283, 703 A.2d 180, 185 (1997). It is, however, an "adjunct crime" that "cannot exist by itself, but only in connection with another crime." *Cox v. State*, 311 Md. 326, 330–31, 534 A.2d 1333, 1335 (1988). The attempt thus attaches itself to the substantive offense and is committed when a person, with the intent to commit that substantive offense "engages in conduct which constitutes a substantial step toward the commission of that crime, whether or not his [or her] intention is accomplished." *Lane v. State, supra*, 348 Md. at

284, 703 A.2d at 187, quoting from *Townes v. State*, 314 Md. 71, 75, 548 A.2d 832, 834 (1988). Although *Grill* establishes that the conduct engaged in by North would constitute an attempt to possess heroin, the crime of attempted possession of a controlled dangerous substance covers other kinds of activity as well. It proscribes far more than simply purchasing or possessing a non-controlled dangerous substance in the reasonable belief that the substance is a controlled one. The issue, then, as we have indicated, is not whether the enactment of § 287B *repealed*—completely abrogated—the crime of attempted possession of a controlled dangerous substance, but whether it sufficed to narrow that offense by withdrawing from its ambit the specific conduct covered by the new statute.

Neither § 287B, as codified, nor the session law that enacted it (1991 Md. Laws, ch. 362) expressly declares an intent to circumscribe the attachment to § 287 of the common law offense of attempt. They are, indeed, entirely silent in that regard. If the common law offense was narrowed, therefore, the narrowing was accomplished by implication, not by expression, and to determine whether the Legislature had such an intent, we turn to the legislative history of the enactment.

The bill that enacted § 287B (1991 House Bill 288) was introduced on behalf of the Governor's Drug and Alcohol Abuse Commission. *See* 1991 Journal of Proceedings of the House of Delegates of Maryland at 246. As introduced, the bill would essentially have codified the common law offense. Proposed new § 287B(a) provided that, except as otherwise authorized, "it is unlawful for any person to attempt to possess or solicit a controlled dangerous substance or any substance the possessor reasonably believes to be a controlled dangerous substance." Subsection (b) would have added that, if the person reasonably believed that the substance was a controlled dangerous substance, it would not be a defense to a prosecution "under this section" that the substance the person possessed, solicited, or attempted to possess was not a controlled dangerous substance. The proposed maximum penalty for that statutory offense was the same as that allowed for the

common law offense—four years imprisonment and a $25,000 fine.

During the legislative process, the bill was substantially recast. Rather than criminalize in statutory form the attempt to purchase a *controlled* substance, subsection (a) was amended in the House of Delegates to proscribe the possession or purchase of a *non-controlled* substance that the person reasonably believes to be a controlled substance. Conforming amendments were made to subsection (b), and language was added defining the term "noncontrolled substance" and providing statutory guidance for determining whether the defendant reasonably believed the substance to be a controlled one. As the bill was enacted, therefore, the crime was a substantive one dealing with the purchase or possession of non-controlled substances, not a replacement of the existing common law offense of attempting to possess a controlled substance.

There is little in the files of the Department of Legislative Services dealing with the bill, but the documents that are available provide ample evidence of the legislative purpose. The Senate Judicial Proceedings Committee Bill Analysis and Floor Report note that the bill, as amended in the House of Delegates, was designed to facilitate reverse sting operations, in which law enforcement officials pose as street-level drug dealers and attempt to sell controlled dangerous substances, in an effort to suppress open-air drug markets and deter casual users from purchasing drugs. The Committee recounted that law enforcement officials had found those operations to be an effective deterrent but noted two problems with using real drugs: "the appearance of impropriety when law enforcement officials sell real drugs"; and the fact that, sometimes, the purchaser manages to get away or use the drug before an arrest can be made. To overcome those problems, the police had resorted to using imitations in their sting operations, but some district court judges "have dismissed charges in these cases, applying the theory of legal impossibility." To avoid the prospect of dismissal, the police were forced to return to the use of real controlled dangerous substances. The bill "would permit law enforcement officers to use noncontrolled

substances without risking the dismissal of such cases on the grounds of legal impossibility . . . ."

Much of the information that led to these legislative findings came from a formal position paper submitted by the Department of Public Safety and Correctional Services. The department noted the success, from a police point of view, of reverse sting operations in suppressing open air drug markets but also pointed out that "when many of these cases were adjudicated, the court ruled that it was not an offense under current law to attempt to possess a substance which was only *believed* by the defendant to be a controlled dangerous substance, but which in fact was a placebo." The department observed that the bill would provide a specific statute under which drug users could be prosecuted and would place law enforcement agencies "in the more ethical position of not having to sell CDS, no matter how diluted the quantity, in order to disrupt street-level drug sales."

It is clear from these documents, and from the amendments made to the bill, that there was no intent on the part of the Legislature to circumscribe the existing crime of attempt. The problem, apart from the ethical ones noted, was that a number of courts, principally, it appears, district courts in Prince George's County, had concluded that the crime of attempt did not cover this kind of conduct. Until we decided *Grill,* in 1995, that was an open issue. It is not clear that *all* trial courts had reached the conclusion drawn by some of the judges in Prince George's County, but the fact that attempt charges had been routinely dismissed by one or more trial judges in a large county was of sufficient concern for the Legislature to act. The obvious intent was not to restrict or replace the law of attempt, especially in those areas where prosecutions were not being dismissed, but rather to provide an alternative offense that would not be subject to the "legal impossibility" defense being raised to attempt prosecutions. The Fiscal Note prepared for the bill by the Legislature's Department of Fiscal Services supports that proposition, for it assumes that more people will be convicted and sentenced.

North relies principally on *State v. Gibson*, 254 Md. 399, 254 A.2d 691 (1969) and *Forbes v. State*, 324 Md. 335, 597 A.2d 427 (1991) for her assertion that § 287B was intended to supplant and replace the common law offense with respect to her conduct. Those cases we find distinguishable.

In *State v. Gibson*, the issue was whether the enactment by the Legislature of Article 27, § 388, creating the crime of manslaughter by automobile, was intended to be the exclusive offense chargeable for causing the death of another as the result of driving, operating, or controlling an automobile and thus to withdraw that conduct from the purview of the common law offense of involuntary manslaughter. The Court of Special Appeals, in an opinion by Chief Judge Robert C. Murphy, had answered that question in the affirmative, and we affirmed that ruling for the reasons given by Judge Murphy. Writing in 4 Md.App. 236, 242 A.2d 575 (1968), Judge Murphy noted that, when § 388 was enacted in 1941, there was a great deal of confusion and uncertainty with respect to the circumstances under which a person might be convicted of involuntary manslaughter for the killing of a person by automobile. It was not clear whether Maryland recognized a misdemeanor/manslaughter rule; it was not clear whether an involuntary manslaughter conviction could be based on conduct that violated only a *malum prohibitum* statute, or conduct that was unlawful but did not evidence a wanton or reckless disregard for life.

The court concluded that, in light of this uncertainty, the legislative intent behind § 388 was "to treat all unintended homicides thereby resulting [from the driving, operation, or control of an automobile] in the same way, without regard to whether the homicide occurred in the course of doing a lawful or unlawful act, or whether such act was *malum in se* or merely *malum prohibitum.*" *Id.* at 246, 242 A.2d at 581. Noting that common law manslaughter was a felony carrying a possible 10–year sentence, whereas the statutory offense was a misdemeanor carrying a maximum penalty of three years, Chief Judge Murphy added that, to construe the statute otherwise would (1) permit a prosecution either for the felony

or the misdemeanor, even though, when the prosecution is based on conduct that was grossly negligent, rather than criminal, the proof necessary to obtain a conviction would be precisely the same, and (2) allow a felony conviction for the common law offense, when the prosecution is based on an unlawful, rather than a grossly negligent, act, on less proof than would be required for the misdemeanor offense. Statutes, the court concluded, should not be construed to reach unreasonable results. Rather, it held that, in enacting § 388, the Legislature "intended to deal with the entire subject matter—unintended homicides resulting from the operation of a motor vehicle—and that the common law crime of involuntary manslaughter, when based on homicides so occurring, is in conflict with the statute and must yield to it to the extent of the inconsistency." *Id.* at 247, 242 A.2d at 581.

*Forbes v. State* merely confirmed the holding in *State v. Gibson.* While operating an automobile, Forbes struck and killed the victim; whether his conduct was intentional or negligent was in dispute. In a single-count indictment, Forbes was charged with murder. By virtue of § 616 of Article 27, however, that indictment included an unstated charge of common law manslaughter. At the conclusion of the trial, defense counsel was precluded from arguing to the jury that the appropriate offense was the statutory one under § 388. The jury acquitted of murder and the lesser included charge of voluntary manslaughter but convicted of involuntary manslaughter. Relying on *Gibson,* Forbes appealed.

We recounted the analysis and holding in *Gibson,* noting that a contrary conclusion would have rendered § 388 essentially nugatory. If the State could obtain a felony conviction for common law involuntary manslaughter on the same evidence or lesser proof than it would take to obtain a misdemeanor conviction under § 388, prosecutors would likely never use the statute. We added that, in the intervening years since *Gibson* was decided, § 388 had been amended a number of times, but the Legislature had not seen fit to modify the *Gibson* interpretation. On the strength of *Gibson,* we reversed Forbes's conviction.

Since the briefs were filed in this case, we decided *Robinson v. State, supra,* 353 Md. 683, 728 A.2d 698, in which we held that, in enacting a comprehensive new statute on assaults, the Legislature implicitly repealed the common law crime of assault. That holding was based on the fact that the new statute not only was a comprehensive one that created degrees of assault unknown to the common law, but actually repealed a number of existing statutory aggravated assault offenses. Thus, we concluded, the new statute "subsumed all previous statutory assault provisions as well as the common law into a single scheme...." *Id.* at 694, 728 A.2d at 703. The new statute thus represented "the entire subject matter of the law of assault and battery in Maryland, and, as such, abrogate[d] the common law on the subject." *Id.* at 694, 728 A.2d at 703.

The legislative intent behind § 287B is quite different. Unlike the situation in *Robinson,* there was no intent for the new statute to occupy the field, to replace the common law offense. The concern was that, because of some trial court rulings that, in retrospect, turned out to be erroneous, the common law offense that the police were content to use was thought not to be available. If the statute had passed as initially drawn, the common law offense might well have been replaced by the statutory crime, which was the situation in *Robinson,* but by taking the alternative approach of creating a new substantive offense, the Legislature seemed content to leave the common law offense in place, to operate where the courts would allow it to operate. The predominant underlying purpose of § 287B, clearly, was to permit the police to continue with their reverse sting operations, using look-alike noncontrolled substances. To the extent that the common law offense would suffice to achieve that purpose, there is no indication that the Legislature intended to prohibit the use of that offense. Thus, unlike the situation in *Gibson* and *Forbes,* we find no evidence of a legislative intent for § 287B to occupy the field—to be the comprehensive and exclusive treatment of the conduct in question. *See Cicoria v. State,* 332 Md. 21, 44, 629 A.2d 742, 753 (1993).

Nor does the disparity in possible penalties have the same effect here as in *Gibson* and *Forbes*. We must keep in mind that, although there is some overlap between the two offenses, in that the same conduct may constitute a violation of both, the offenses are by no means identical, or the same for merger purposes. Section 287B requires proof that the defendant actually possessed or purchased a non-controlled substance, which is not required for a common law attempt to possess the substance. If, as occurred in this case, the defendant destroys the substance before it can be recovered, it may be difficult for the State to prove what exactly was purchased or possessed; the defendant may claim one thing, the police another, leaving the jury to make a credibility determination. This can be a particular problem when arrests are delayed for some period of time, until the end of the undercover operation. At least in those situations, and perhaps others, the State may need, or at least find it useful, to rely on the common law offense.

On this record, we believe that the basic rule disfavoring repeal of the common law by implication, and not the exception to that rule, applies. We conclude that § 287B did not circumscribe the common law offense of attempt to possess a controlled dangerous substance.

JUDGMENT OF CIRCUIT COURT FOR BALTIMORE CITY REVERSED; CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS; APPELLEE TO PAY THE COSTS.

BELL, C.J., and ElDRIDGE, J., dissent.

ELDRIDGE, Judge, Dissenting:

I dissent. The majority's view is inconsistent with this Court's prior holdings in *State v. Gibson*, 254 Md. 399, 254 A.2d 691(1969), affirming and adopting *State v. Gibson*, 4 Md.App. 236, 242 A.2d 575 (1968), and *Forbes v. State*, 324 Md. 335, 597 A.2d 427 (1991). Contrary to the majority, I find these cases controlling and not "distinguishable" from the case at bar.

The statute at issue in this case, Maryland Code (1957, 1996 Repl.Vol.), Art. 27, § 287B, clearly parallels the statute at issue in *Gibson* and *Forbes.* Section 287B encompasses an entire subject area within the larger realm of common law attempt to possess controlled dangerous substances (CDS) and has a less severe penalty than the common law offense. This was true of the two offenses involved in *Gibson* and *Forbes.* I would follow the principle applied in those cases and hold that common law attempt to possess CDS has been repealed under the limited circumstance where the accused either purchases or possesses non-CDS with the reasonable belief that it is CDS. In that situation, § 287B should be the sole avenue of prosecution.

Although the " 'rules of the common law are not to be changed by doubtful implication,' " when it is clear that the survival of common law coverage " 'would in effect deprive [the statute] of its efficacy and render its provisions nugatory,' " the statute abrogates the common law to the extent of its provisions. *Lutz v. State,* 167 Md. 12, 15, 172 A. 354, 356 (1934), quoting 25 R.C.L. 1054. If the provisions of the statute are in conflict with the common law, then the statute controls, and if the statute covers an entire subject matter, the common law is replaced by the statute as to that subject. *Ibid.*

In *State v. Gibson, supra,* the defendant was charged with four counts of common law involuntary manslaughter and one count under Article 27, § 388, the manslaughter by motor vehicle statute. The four common law manslaughter counts were based on the misdemeanor-manslaughter rule, and there was some question as to whether, and to what extent, the misdemeanor-manslaughter rule was applicable as a matter of Maryland common law. The defendant filed a motion to dismiss the first four counts, arguing that involuntary manslaughter caused by motor vehicle was no longer encompassed by the common law in light of the enactment of § 388. The circuit court granted the motion to dismiss, and both appellate courts affirmed. Even though § 388 did not cover the entire field of common law involuntary manslaughter, this Court

adopted the Court of Special Appeals' opinion and holding that the limited area of involuntary manslaughter by motor vehicle was preempted by the statute, thus abrogating the common law offense in that limited area. In *Forbes v. State, supra,* when presented with the same issue, we re-affirmed the holding in *Gibson.*

The situation in the case at bar is similar to that in *Gibson* and *Forbes.* Theresa North purchased a substance which she reasonably believed was heroin but which, in fact, was not a CDS at all. Like the question concerning common law misdemeanor-manslaughter in *Gibson,* in 1991 there was some question among trial courts as to whether a person in North's position could be found guilty of the common law offense of attempting to possess a CDS, or whether the defense of legal impossibility was applicable.[1] In an effort to address these very limited circumstances within the larger subject of common law attempt to possess CDS, the General Assembly enacted § 287B. The legislative history clearly shows that the statute was meant to further prosecutions based upon reverse-sting operations. In order to accomplish this objective, § 287B explicitly negates the defense of impossibility. As a result, the statute has carved out a limited exception to the common law, covering the entire matter of purchase and possession of non-CDS, in which impossibility is no longer a viable defense. Although the remainder of the common law subject was left intact, to the extent the statute encompasses the area, the common law should yield. *See State v. Gibson, supra,* 4 Md.App. at 247, 242 A.2d at 581–582, citing *Lutz v. State, supra,* 167 Md. 12, 172 A. 354. *See also, Forbes v. State, supra,* 324 Md. at 341, 597 A.2d at 430.

The penalty provision of § 287B also shows the Legislature's intent to partially abrogate the common law. As the majority explains, the bill which became § 287B was House Bill 288 of the 1991 legislation session. The bill, as initially

---

1. As the majority explains, this Court later held that the actual issue was one of factual impossibility, which is not a defense to common law attempt. *See Grill v. State,* 337 Md. 91, 651 A.2d 856 (1995).

introduced, would have abrogated the entire field of common law attempt to possess CDS. The Title of the bill, as first introduced, reflected an intent to criminalize the "attempt to possess or solicit controlled dangerous substances or other substances reasonably believed to be controlled dangerous substances. . . ." *See* Ch. 362 of the Acts of 1991, *Laws of Maryland* 1991 at 2343. The maximum penalty under this bill was equal to that imposed for common law attempt to possess CDS, namely up to four years imprisonment and a $25,000 fine. *See Laws of Maryland* 1991, *supra,* at 2344, and Code (1957, 1987 Repl.Vol., 1991 Cum.Supp.), Art. 27, §§ 290, 287(e). When the bill was amended, in the course of the legislative process, it excluded the attempt to possess actual CDS and only prohibited the possession or purchase of "non-controlled substances reasonably believed to be controlled dangerous substances." *Laws of Maryland,* 1991, *supra,* at 2343. The penalty under the amended bill was far less severe: one year imprisonment and a $500 fine. *Id.* at 2344.

Once again, the legislative circumstances in the case at bar clearly parallel those involved in *Gibson* and *Forbes.* In *Gibson,* the defendant was facing a ten-year maximum imprisonment penalty under common law involuntary manslaughter, whereas the maximum penalty under the statute was limited to three years. In light of the disparate penalties, Chief Judge Murphy's opinion for the Court of Special Appeals in *Gibson,* adopted by this Court, stated (4 Md.App. at 247, 242 A.2d at 582):

"While the crime of manslaughter is not defined by statute in Maryland, it is, as heretofore stated, recognized by Section 387 of Article 27 and provision made for its punishment. The rule is well settled that 'where a statute prohibits a particular act, and imposes a penalty for doing it, and a subsequent statute imposes a penalty for the same, or practically the same, offense, the later statute repeals the earlier one, and this is true whether the penalty is increased or diminished.' "

This Court and the Court of Special Appeals in *Gibson* held that the clear intent of the "Manslaughter by Automobile"

statute was "to encompass the entire field of unintentional criminal homicides resulting from the operation of a motor vehicle," thereby repealing common law involuntary manslaughter "when based on occurrences of that type." *Gibson,* 254 Md. at 401, 254 A.2d at 691–692.

The majority argues that the "obvious intent" of Art. 27, § 287B, was to provide an alternative approach for prosecutors in the county or counties where trial courts were dismissing cases based on legal impossibility. (Majority opinion at 315).[2] Under the majority's view, in Prince George's County, for example, charges based upon reverse-sting operations would be brought under the new statute. In all the other counties, where common law attempt charges were not being dismissed, the common law would remain a viable option for prosecutors. Therefore, under the majority's view of what the Legislature contemplated, if a defendant committed the same act in both Prince George's County and Baltimore County, he would likely face a maximum of one year imprisonment in the former and four years in the latter. This is the result which the majority thinks is most "obvious." I doubt that this was the intent of the Legislature. As in *Gibson* and *Forbes,* common sense dictates that the General Assembly's purpose by enacting § 287B was to treat all charges of possession or purchase of non-CDS in the same manner, and have them prosecuted under the new statute.

If the statute and the common law were meant to co-exist in 1991, the new statute would have been nugatory in most counties of the State, and, after this Court's opinion in *Grill v. State, supra,* would have been nugatory throughout the entire State. Under the majority's holding, prosecutors will have no incentive to utilize § 287B. This Court in *Forbes v. State, supra,* 324 Md. at 340–341, 597 A.2d at 430, pointed out that, if the manslaughter by automobile statute, Art. 27, § 388, would

---

**2.** Although the majority states "that a number of courts, principally . . . district courts in Prince George's County" were dismissing cases based on legal impossibility, the "Background" section of the Senate Floor Report on House Bill 288 refers only to dismissals within Prince George's County.

not have been deemed to repeal common law involuntary manslaughter for circumstances covered by the statute, "prosecutors would never utilize § 388 since the same proof would lead to a conviction under the common law involuntary manslaughter offense. This would render § 388 nugatory." The same is true with regard to § 287B. The majority today has effectively repealed Art. 27, § 287B.

The General Assembly in 1991 carved out of the area of common law attempt to possess CDS the specific matter of attempt to possess noncontrolled substances reasonably believed to be CDS. It made a policy determination that the former offense should continue to be punishable by a maximum of four years imprisonment but that the latter offense should be punishable by a maximum of one year imprisonment. This policy decision makes sense in light of the obvious difference between CDS and noncontrolled substances. The majority today has overruled this legislative policy determination.

Chief Judge BELL concurs in this dissenting opinion.