EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Narciso Reyes Carrillo<br><br>Recurrido | Certiorari<br><br>2021 TSPR 130<br><br>207 DPR \_\_\_\_ |
|---|---|

Número del Caso: CC-2019-905

Fecha: 26 de agosto de 2021

Tribunal de Apelaciones:

> Panel III

Oficina del Procurador General:

> Lcdo. Isaías Sánchez Báez
> Procurador General

> Lcda. Lorena Cortés Rivera
> Subprocuradora General

> Lcdo. Pedro A. Vázquez Montijo
> Subprocurador General

Abogado de la parte recurrida:

> Lcdo. Moisés Abreu Cordero

Materia: Derecho Penal-Nuestro Ordenamiento Penal permite la punición de las tentativas inidóneas o imposibles. Para el análisis de dicha figura jurídica se debe aplicar un enfoque objetivo-subjetivo.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| El Pueblo de Puerto Rico<br><br>    Peticionario<br><br>        v.<br><br>Narciso Reyes Carrillo<br><br>    Recurrido | CC-2019-0905 | |

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco.

En San Juan, Puerto Rico, a 26 de agosto de 2021.

Son raras las ocasiones en que tenemos el espacio de adentrarnos en una teoría penal sustantiva que, a pesar de generar gran debate doctrinal, tan siquiera se había mencionado en nuestra jurisprudencia previa. La presente intervención nos brinda esa oportunidad ya que se reúne la situación fáctica ideal para evaluar la figura de la tentativa imposible, también llamada tentativa inidónea o delito imposible. La punibilidad de esta figura jurídica es cuestionada por tratarse de situaciones en las que las circunstancias del caso convierten en totalmente inalcanzable la comisión del delito pretendido por el acusado. Adelantamos que, conforme al texto vigente de la ley aplicable, nuestro Ordenamiento Penal permite la punición de las tentativas imposibles.

Previo a iniciar nuestro análisis, expondremos los hechos que dieron génesis a la controversia de autos.

I

Para el 2016, el Sr. Narciso Reyes Carrillo (recurrido) brindaba servicios médicos en el Centro Médico Correccional de Bayamón. Mientras desempeñaba esta labor, le comunicó a un confinado que deseaba agenciarse "algún trabajo" en miras de conseguir dinero.[1] Eventualmente el confinado le indicó al recurrido que su primo lo contactaría para que ingresara algún objeto a la cárcel y que sería compensado por hacerlo.[2] Según acordado, el 21 de octubre de 2016, el alegado primo del confinado le suministró al recurrido un objeto pequeño que aparentaba contener treinta y un (31) gramos de cocaína para que se la entregara al confinado. El recurrido recibió cuatrocientos dólares ($400.00) como remuneración por hacer la entrega.

Como cuestión de hecho, la persona que se reunió con el recurrido para proporcionarle la supuesta cocaína no era realmente primo del confinado, sino un agente del Negociado de Investigaciones Especiales (NIE).[3] El agente (agente encubierto), asumió una identidad ficticia como parte de un plan operacional sobre labor encubierta en contra del

---

[1] Petición de *Certiorari*, Apéndice, págs. 106; 140; 148.
[2] *Íd.*, págs. 106-108.
[3] De acuerdo con la ley vigente al momento de los hechos, el Negociado de Investigaciones Especiales, entonces adscrito al Departamento de Justicia, tenía la facultad de realizar investigaciones, estudios e intervenciones con el fin de identificar tendencias, situaciones de alto riesgo y posibles áreas de vulnerabilidad en la lucha contra el crimen. 3 LPRA ant. Ap. XXI.

recurrido. El plan operacional fue autorizado luego de que el confinado informara al NIE la invitación ilícita que le hizo el recurrido. El confinado suscribió un convenio de confidente participante para asistir en el plan operacional.[4]

Como parte de este plan, el confinado puso en contacto al recurrido con el agente encubierto para que coordinaran la entrega de la presunta cocaína. Entregado el paquete al recurrido, y la correspondiente compensación, en algún momento durante el día el confinado se comunicó con este para recibir el objeto. Para lograr la entrega, el confinado solicitó servicios médicos. Una vez llevado al Centro Médico Correccional, el recurrido le entregó el paquete al confinado. En esencia, el plan operacional se concretó.

Es necesario hacer hincapié en que el paquete entregado al recurrido contenía un polvo blanco, pero no se trataba de cocaína, sino de harina de trigo que la simulaba. El objeto fue preparado por otra agente (en adelante, "agente del NIE") como parte del plan operacional. En el interior de este, se colocó una pegatina con la expresión "Feliz Día" como mecanismo de identificación posterior a la ejecución del plan.

Después de recibir el paquete, el confinado fue escoltado a la Unidad Canina de la Institución Correccional de Bayamón con el motivo de que los agentes recuperaran la

---

[4] Petición de *Certiorari*, Apéndice, págs. 139; 162.

evidencia. El confinado y la agente del NIE iniciaron y fecharon el empaque. Igual hicieron con el sobre en el cual este fue insertado. La evidencia permaneció en una bóveda hasta el 25 de octubre de 2016, cuando fue inspeccionada por agentes policiales para corroborar que se trataba del objeto usado en la ejecución del plan operacional. Identificaron el objeto exitosamente tras abrirlo y constatar la presencia de la pegatina con la expresión "Feliz Día".

Así las cosas, el recurrido fue acusado por el delito de posesión e introducción de objetos a un establecimiento penal, tipificado en el Art. 277 del Código Penal de Puerto Rico, *infra*. Luego de la celebración del Juicio por Tribunal de Derecho, el foro sentenciador emitió fallo condenatorio por el delito de tentativa de violación al Art. 277 del Código Penal.

Insatisfecho, el recurrido presentó oportunamente un recurso de Apelación ante el Tribunal de Apelaciones. Adujo como error que el pliego acusatorio a base del cual fue procesado era contrario al principio de legalidad y que la prueba presentada no fue suficiente para establecer todos los elementos del delito imputado.

El foro apelativo intermedio validó los planteamientos del recurrido y revocó la Sentencia emitida por el Tribunal de Primera Instancia. Coligió que no podía hallarse culpable al recurrido por atentar cometer el delito

estatuido en el Art. 277 del Código Penal, *infra*, dado que lo introducido a la Institución Penal fue harina de trigo y no una sustancia controlada u otro objeto que pudiera afectar el orden o la seguridad de la prisión. El foro revisor comprendió que el recurrido no podía ser culpable de la tentativa del delito porque para ello tenían que estar presentes desde un inicio todos los elementos del delito intentado. Por lo tanto, determinó que como lo que el recurrido recibió y entró a la Institución Penitenciaria era harina de trigo, no estaban presentes todos los elementos establecidos por el Art. 277 del Código Penal. De manera que castigarlo por cometer la tentativa de ese delito equivaldría a penalizarlo por conducta no provista mediante estatuto penal, lo que sería contrario al principio de legalidad.

Inconforme con el dictamen del Tribunal de Apelaciones, el Ministerio Público acudió ante nos mediante el recurso de *Certiorari*. Arguyó como error del foro *a quo* el haberse reconocido un quebrantamiento del principio de legalidad basado en que el contrabando era harina de trigo y no cocaína. Lo anterior, aun cuando no existe duda de que el recurrido introdujo el contrabando a la cárcel bajo el entendimiento de que era cocaína. Argumentó la aplicación de la teoría penal conocida como tentativa imposible, la cual descarta la imposibilidad de cometer el delito como eximente de responsabilidad criminal.

Tras expedirse el auto solicitado, el caso quedó sometido en los méritos para su adjudicación el 9 de noviembre de 2020. Contando con el beneficio de la comparecencia de ambas partes, estamos en posición de resolver.

## II

## A.

Para que una persona pueda ser castigada criminalmente, al momento de llevar a cabo el acto delictivo debe haber contado con un aviso adecuado sobre la conducta prohibida y la pena que conlleva. El propósito perseguido es limitar la facultad punitiva del Estado de modo que no sea ejercida arbitrariamente. Al conjunto de garantías dirigidas a este fin se le conoce como el principio de legalidad. Fundado en la máxima de que no hay delito ni hay pena sin ley previa (*nullum crimen nulla poena sine lege*), el principio de legalidad estatuido en el Ordenamiento Penal puertorriqueño ofrece las garantías siguientes:

> No se instará acción penal contra persona alguna por un hecho que no esté expresamente definido como delito en este Código o mediante ley especial, ni se impondrá pena o medida de seguridad que la ley no establezca con anterioridad a los hechos.
>
> No se podrán crear ni imponer por analogía delitos, penas ni medidas de seguridad. Art. 2, Código Penal de Puerto Rico, 33 LPRA sec. 5002.

En esencia, las garantías consisten en la proscripción de: (1) la creación de delitos mediante jurisprudencia (*lex*

*scripta*) o por analogía (*lex stricta*); (2) la aplicación retroactiva de delitos (*lex praevia*), y (3) la imprecisión en los elementos constitutivos de delito (*lex certa*). *Pueblo v. Plaza Plaza*, 199 DPR 276, 283 (2017).

Respecto a la garantía que hace impermisibles las leyes que padezcan de vaguedad en los elementos constitutivos de delito, una persona de inteligencia ordinaria debe poder entender razonablemente la conducta prohibida.[5] Por ende, no se formaliza el principio de legalidad si para conocer lo que está vedado es ineludible que la persona realice un esfuerzo hermenéutico propio de juristas. *Pueblo v. Rivera Rivera*, 183 DPR 991, 997 (2011). No obstante, la claridad que deben tener las leyes penales sobre los elementos constitutivos de delito no equivale a que estén exentas de interpretación judicial. Hemos expresado que el principio de legalidad:

> [N]o implica que cada hecho constitutivo de delito deba desprenderse de una simple lectura de la ley, ya que todas las leyes, incluyendo las de índole penal, están sujetas a interpretación. Conforme a ello, ante una duda de qué es lo que constituye delito según determinada disposición penal, el tribunal debe aplicar los principios de hermenéutica correspondientes, lo cual podría resultar en alcanzar una interpretación restrictiva o extensiva del delito. *Pueblo v. Negrón Nazario*, 191 DPR 720, 739 (2014).

---

[5] La prohibición de leyes penales que sufran de vaguedad es también un requisito constitucional ya que vulneran el derecho a un debido proceso de ley. *Pueblo v. Hernández Colón*, 118 DPR 891, 901-903 (1987).

En ese sentido, al momento de realizar exégesis los tribunales le darán a toda ley penal la interpretación que mejor responda a los propósitos que esta persigue. Art. 13, Código Penal de Puerto Rico, 33 LPRA sec. 5013. Tal cual, los tribunales no son ajenos a que las leyes penales "tienen que ser analizadas en consonancia con el propósito social que las inspira y en sintonía con la realidad y el problema humano que persiguen resolver". *Pueblo v. Roche*, 195 DPR 791, 804 (2016). Así, se interpretará la ley "como un ente armónico, dándole sentido lógico a sus diferentes disposiciones y supliendo las posibles deficiencias cuando sea necesario". *Pueblo v. Ruiz*, 159 DPR 194, 210 (2003). Este ejercicio hermenéutico podría resultar en una interpretación restrictiva o extensiva del delito.

Para satisfacer el principio de legalidad, ciertamente al analizar la aplicación de un delito a unos hechos los tribunales no pueden rebasar los contornos razonables de interpretación. S. Mir Puig, *Derecho Penal: Parte General*, 10ma ed., Barcelona, Ed. Reppertor, 2016, pág. 125. Por ello, al interpretar un estatuto penal deben ser cuidadosos respecto a penalizar un "hecho no tipificado como delito por su semejanza con uno tipificado como tal; o admitir un agravante o una gradación específica no enumerada, basándose en sus semejanzas con una enumerada; o imponer una pena no contemplada por la ley por su analogía con una prevista en la ley". *Pueblo v. Figueroa Pomales*, 172 DPR

403, 415 (2007), citando a D. Nevares-Muñiz, *Derecho Penal Puertorriqueño: Parte General*, Hato Rey, Inst. Desarrollo del Derecho, 1983, pág. 63. La garantía de que mediante la interpretación judicial no se crearán delitos por analogía busca asegurar que no se supla la voluntad del legislador cuando no la hay. El razonamiento subyacente es que, de haber existido tal intención, el legislador la hubiera expresado claramente en la ley. *Pueblo v. Ruiz*, supra, pág. 211. Como consecuencia, cuando posterior al ejercicio hermenéutico del tribunal aún persista duda sobre la aplicabilidad de un delito a unos hechos, la ley se interpretará restrictivamente en cuanto a lo que desfavorezca al imputado de delito y liberalmente en cuanto a lo que le favorezca. *Pueblo v. Negrón Nazario*, supra, pág. 739.

Podemos distinguir una interpretación permisible y una que no lo es como sigue:

> La *diferencia entre interpretación* (siempre permitida si es razonable y compatible con los valores constitucionales) *y analogía* (prohibida si perjudica al reo) es la siguiente: mientras que la interpretación es la búsqueda de un sentido del texto legal que se halle dentro de su *"sentido literal posible"*, la analogía supone la aplicación de la ley penal en un supuesto no *comprendido* en ninguno de los sentidos posibles de su letra, pero *análogo* a otros sí comprendidos en el texto legal. (Énfasis en el original). Mir Puig, *op. cit.*, pág. 125.

Cónsono con ello, si luego de la apreciación judicial se determina que la conducta está comprendida dentro de la descripción literal del texto legal, entonces se constituyó

el delito. Si, por el contrario, luego de la apreciación judicial se determina que la conducta no está comprendida dentro de la descripción literal del texto legal, entonces el principio de legalidad exige que la controversia sea resuelta a favor del imputado.

**B.**

Determinada conducta criminal puede ser punible, aunque no logre consumarse el delito pretendido. Se trata de alguna acción delictiva emprendida por una persona con la intención de concretarla, pero que no lo consigue debido a razones externas a su voluntad. La figura de la tentativa es la encargada de abordar estas situaciones.

Mientras que a un delito consumado se le conoce como un delito perfecto, la tentativa puede caracterizarse como un delito imperfecto o incompleto. D. Nevares Muñiz, *La Tentativa de Delito en el Código Penal de 2004: Figura de Convergencia*, 43 Rev. Jur. UIPR 371, 372 (2009). La distinción se debe a que en la tentativa no concurren la totalidad de los elementos del delito intentado, lo cual produce una falta de consumación. A pesar de que el delito de tentativa es dependiente de otro en el sentido de que sus elementos están referidos a algún delito especial descrito en ley, no por ello deja de ser un título de delito autónomo y jurídicamente distinto del delito que se intentó cometer sin éxito. Con respecto a lo antes planteado, "[e]n lo que concierne a su estructura, la tentativa es perfecta

porque encierra todos los elementos que son necesarios para la configuración de un delito: el hecho típico, la antijuridicidad, la culpabilidad. Solo que en su objetividad jurídica constituye un peligro de lesión; no lesión efectiva de un bien jurídico". *Íd.*

Actualmente encontramos estatuido el delito de tentativa en el Art. 35 del Código Penal de Puerto Rico, según enmendado, 33 LPRA sec. 5048. El precitado artículo indica que:

> Existe tentativa cuando la persona actúa con el **propósito** de producir el delito o **con conocimiento** de que se producirá el **delito**, y la persona **realiza acciones inequívoca e inmediatamente dirigidas a la consumación** de un delito que **no se consuma por circunstancias ajenas** a su voluntad. (Énfasis suplido). *Íd.*

Podemos apreciar que, en cuanto a los elementos **subjetivos**, la tentativa requiere que el sujeto actúe con el propósito de producir un delito o con conocimiento de que se producirá. Con relación a un "resultado", una persona actúa a propósito cuando su objetivo consciente es la producción de dicho resultado, y actúa con conocimiento cuando es consciente de que la producción del resultado es una consecuencia prácticamente segura de su conducta. Art. 22, Código Penal de Puerto Rico, 33 LPRA sec. 5035. Asimismo, con relación a un elemento de "circunstancia", una persona actúa a propósito cuando cree que la circunstancia existe, y actúa con conocimiento cuando es consciente de que la existencia de la circunstancia es

prácticamente segura. *Íd*. Un "resultado" se refiere a "una circunstancia que ha sido cambiada mediante la conducta del actor" mientras que una "circunstancia" es "(a) una característica de la conducta, del autor o de la víctima, o (b) una descripción del entorno o contexto en el cual ocurre la conducta". Art. 14, Código Penal de Puerto Rico, 33 LPRA sec. 5014.

Por otro lado, en cuanto a los elementos **objetivos**, para que se configure la tentativa es requisito que se realicen acciones inmediata e inequívocamente dirigidas a consumar el delito especial que se pretendía cometer. Una acción está inmediatamente dirigida a consumar un delito si se trata de la última fase o la inmediatamente anterior a la consumación del delito intentado, según el plan delictivo del autor. L.E. Chiesa Aponte, *Derecho Penal Sustantivo*, 2da ed., Estados Unidos, Pubs. JTS, 2013, pág. 206. Al establecerse que las acciones deben estar inmediatamente encaminadas a la comisión del delito, no bastan los meros actos preparatorios, sino que deben ser actos de ejecución del delito propiamente. *Íd*., pág. 204. En cambio, se consideran inequívocas aquellas acciones que sin lugar a duda apuntan hacia la comisión de un delito. D. Nevares Muñiz, *Derecho Penal Puertorriqueño: Parte General*, 7ma ed., San Juan, Instituto para el Desarrollo del Derecho, Inc., 2015, pág. 326. A esto se le conoce como el requisito de inequivocidad o *res ipsa loquitur*, seguido en el Derecho

Común, el cual es muy similar a la teoría de univocidad proveniente de la tradición civilista. *Íd.*, págs. 325-326. Este requisito percibe la conducta realizada como ilustrativa del estado mental del actor que la lleva a cabo. El acto se considera inequívoco cuando la acción ya irrevocable "ha adquirido existencia independiente de la voluntad del actor". *Íd.* Al examinar el acto debe deducirse manifiestamente la voluntad criminal: "Los actos deben exponer de modo no equívoco la finalidad criminal del sujeto activo y una correspondencia entre el significado exteriormente perceptible de los actos y la ofensa típica". Nevares Muñiz, *supra*, págs. 395-396.

## C.

En materia penal sustantiva, el caso de autos nos ofrece la coyuntura para examinar por vez primera la figura de la tentativa inidónea. Una tentativa de delito se considera inidónea cuando "conforme a la naturaleza de las cosas y a las circunstancias particulares que rodearon la acción, es imposible que el autor logre lo que se propone". Chiesa Aponte, *op. cit.*, págs. 210-211. De ahí que las tentativas idóneas son aquellas en que existe la posibilidad real de lograr el resultado deseado por el actor, mientras que las inidóneas son aquellas en que no es posible lograrlo. En vista de que un acto se considera idóneo cuando es capaz de producir el resultado deseado e inidóneo cuando es inapto para ese fin, se suscita la

controversia sobre si las tentativas inidóneas cumplen con el requisito de inequivocidad. En otras palabras, cabe preguntarse si ante la presencia de un acto inidóneo, es factible satisfacer la exigencia de que la conducta esté inequívocamente (sin lugar a duda) dirigida a cometer un delito.

La disposición legal que recoge actualmente el delito de tentativa procede del derogado Art. 35 del Código Penal de 2004, 33 LPRA ant. sec. 4663, el cual, a su vez, procedía del derogado Art. 26 del Código Penal de 1974, 33 LPRA ant. sec. 3121. Fue este último Código el que introdujo el requerimiento de la inequivocidad de la acción para completarse el tipo delictivo. En ese entonces, la Asamblea Legislativa tuvo ante su consideración varios borradores de proyectos para la adopción del Código Penal de 1974. Influyeron en su redacción, *inter alia*, los proyectos de códigos desarrollados por los profesores Francisco Pagán Rodríguez y José Miró Cardona. Véase Informe de la Comisión de lo Jurídico Penal del Senado de Puerto Rico sobre el P. del S. 753, 17 de junio de 1974, págs. 16-18.

Cabe resaltar que, adicional a exigir la inequivocidad del acto, los proyectos de códigos de los profesores Pagán Rodríguez y Miró Cardona sugerían requerir la idoneidad del acto para concretar el delito de tentativa. El proyecto del Prof. Pagán Rodríguez recomendó la redacción del delito de tentativa de la manera siguiente: "Existe tentativa cuando

el autor realiza actos **idóneos** dirigidos inequívocamente a la ejecución de un delito, el cual no se consuma por circunstancias ajenas a su voluntad". (Énfasis suplido). F. Pagán Rodríguez, *Texto del Proyecto de Código Penal*, 6 Rev. Jur. UIPR 68, 74-75 (1971). De manera similar, el proyecto del Prof. Miró Cardona sugirió este texto: "Se considerará que el delito queda en fase de tentativa cuando el agente realiza acciones **idóneas** dirigidas inequívocamente a la ejecución de un delito, el cual no se consuma por circunstancias ajenas a su voluntad". (Énfasis suplido). J. Miró Cardona, *Borrador para un Proyecto de Código Penal Puertorriqueño*, 41 Rev. Jur. UPR 401, 721 (1972). Es de notar que en esos borradores de códigos se hizo una distinción entre los conceptos de idoneidad e inequivocidad, lo cual indica que, aunque relacionados, no son conceptos sinónimos. **A pesar de contar con el beneficio de esas propuestas al momento de desarrollar y aprobar el Código Penal de 1974, la Asamblea Legislativa descartó incluir en el cuerpo legal el requisito de que la conducta sea idónea para que pueda castigarse como tentativa. De esta forma, se limitó a señalar que la conducta debe ser inequívoca.** Por consiguiente, la construcción textual del delito contenido en el Código Penal de 1974 permitía la punición de las tentativas inidóneas siempre que las acciones ejecutadas hubieran sido inequívocas para la consumación del crimen pretendido. Esta interpretación

coincide con la manifestada por el Secretario de Justicia en sus comentarios a la edición de 1975 del Código Penal: "El Código elimina la cualificación hecha en Proyectos anteriores en las cuales las acciones u omisiones realizadas deben ser **idóneas** bajo la premisa de que pueden [sic] haber actuaciones no idóneas pero dirigidas inequívocamente a la ejecución de un delito que deben ser penalizadas". *Código Penal de Puerto Rico Comentado edición Colegio de Abogados*, 36 Rev. Colegio de Abogados 1, 39 (Núm. 1) (1975). Dado que el requisito de inequivocidad fue preservado igualmente en el Código Penal de 2012, *supra*, solo resta concluir que al presente un acto no tiene que ser idóneo para penalizarse, pero sí debe ser inequívoco.

Esclarecido que las tentativas inidóneas pueden ser penalizadas en Puerto Rico, debemos definir el estándar a utilizarse para atenderlas. En específico, qué características debe reunir la acción delictiva para considerarse que está "inequívocamente" dirigida a cometer un delito. Bajo nuestro sistema mixto de Derecho, la figura de la tentativa se nutre del Derecho Común y del Civil, por lo que conviene estudiar el trato brindado a las tentativas inidóneas en ambos sistemas para elaborar el estándar que habremos de aplicar en nuestra jurisdicción al auscultar la inequivocidad de la acción.[6]

---

[6] D. Nevares Muñiz, *La Tentativa de Delito en el Código Penal de 2004: Figura de Convergencia*, 43 Rev. Jur. UIPR 371, 373 (2009) ("La evolución de la figura de la tentativa de delito en Puerto Rico es un ejemplo de

Los comentaristas civilistas han formulado distintas teorías para delimitar el análisis de las tentativas inidóneas y su punibilidad, defendiendo puntos de vista objetivos,[7] subjetivos[8] y subjetivo-objetivos.[9]

Bajo el enfoque objetivo, se enfatiza el **peligro generado** y se distingue entre la inidoneidad relativa y la absoluta. E. Bacigalupo, *Derecho Penal: Parte General*, 2da ed., Buenos Aires, Ed. Hammurabi, 1999, págs. 464, 470. La inidoneidad relativa se refiere a la situación en la cual el acto es apto para producir la consumación y, en presencia de circunstancias distintas, habría sido idóneo para lograr el resultado deseado.[10] Mientras, la inidoneidad absoluta se refiere a la situación en la cual el acto de ninguna manera sería capaz de producir la consumación.[11] Nevares Muñiz, *op. cit.*, pág. 331. En estas situaciones la inidoneidad relativa está sujeta a castigo y la inidoneidad absoluta es impune.

---

la tensión entre ambos sistemas al evolucionar de disposiciones especiales propias del *common law* en el Código Penal de 1902 hasta una figura autónoma en los Códigos de 1974 y 2004, donde convergen en su redacción e interpretación el *common law* y el derecho continental europeo").

[7] Véase *e.g.* R. Núñez Barbero, *El Delito Imposible*, Salamanca, Acta Salmanticensia, Derecho, T. V, Vol. I, 1963, págs. 79-105.

[8] Véase *e.g.* E. Cuello Calón, *Derecho Penal*, 17ma. ed, Barcelona, Bosch, T. I, Vol. II, 1975, págs. 626-629.

[9] Véase *e.g.* G. Rodríguez Mourullo, *Delito imposible y tentativa de delito en el Código Penal Español*, Anuario de Derecho Penal y Ciencias Penales, T. XXIV, Madrid, 1971, págs. 377-379.

[10] Se mencionan como ejemplos las situaciones en las que se administra una sustancia efectivamente venenosa (arsénico), pero en cantidad insuficiente para producir el efecto deseado o cuando la víctima resulta inmune a la sustancia. También, cuando se apuñala con arma efectiva a quien lleva cota de malla. L. Jiménez de Asúa, *Tratado de Derecho Penal*, T. VII, 2da ed., Buenos Aires, Ed. Losada, 1977, pág. 691.

[11] Por ejemplo, un intento de envenenamiento con sustancias inofensivas, como lo sería un terrón de azúcar o un vaso de agua. *Íd.*

Por otro lado, bajo el enfoque subjetivo, se enfatiza la **voluntad de la persona** que ejecuta la acción. A diferencia del enfoque objetivo, en el subjetivo la inidoneidad absoluta puede castigarse, pues el peso recae en si el actor era de la opinión que la acción realizada era apropiada para efectivamente producir el delito que intentaba, sin importar su capacidad para producirlo. *Íd.*

Por último, en el catálogo de enfoques objetivos-subjetivos encontramos la denominada teoría de la impresión, que intenta limitar los excesos del enfoque puramente subjetivo incorporando el parecer de la sociedad como componente objetivo en la justipreciación de la punibilidad del acto. Bajo la teoría de la impresión, la evaluación se centra en la **peligrosidad que el acto representa** para el bien jurídico protegido. E. Bacigalupo, *op. cit.*, págs. 465-466. La teoría postula que, teniendo en cuenta los fines de prevención general del Derecho Penal, basta para castigar que la conducta suscite en la sociedad "la impresión de que se realiza un ataque contra el ordenamiento jurídico y que perturba, por consiguiente, la segura validez del mismo en la conciencia de la colectividad". E. Mezger, *Derecho Penal: Libro de Estudio, Parte General* (Conrado A. Finzi, trad.), 6ta ed., Ed. Bibliográfica Argentina, 1958, pág. 288. En esencia sostiene que "[l]a confianza de la colectividad en la vigencia del Ordenamiento jurídico sería menoscabada si

permaneciera impune aquel que proyecta seriamente un delito importante y se pone en marcha su ejecución". H. Jescheck y T. Weigend, *Tratado de Derecho Penal: Parte General* (M. Olmedo Cardenete, trad.), 5ta ed., Granada, Ed. Comares, 2002, pág. 570.

En contraste, de acuerdo con los tratadistas del derecho angloamericano, la evaluación de las tentativas imposibles, según allí se les conoce, dependerá de si se trata de una imposibilidad fáctica, legal o inherente. W.R. LaFave, *Substantive Criminal Law*, 3ra ed., Thomson Reuters, 2017, Vol. II, sec. 11.5(a), págs. 319-321.

La imposibilidad fáctica denota conducta donde el **objetivo del actor está prohibido** por el Derecho Penal, **pero una circunstancia desconocida por este le impide llevarlo a cabo**. *Íd.*, págs. 323-326. La imposibilidad fáctica no es aceptada como defensa justificativa del acto criminal, por lo que la conducta sería punible bajo esta teoría.

Por su parte, la imposibilidad legal denota conducta donde el objetivo del actor no es criminal, aunque este crea que lo es. Generalmente la defensa será inoperante salvo que la acción intentada no haya sido legislada como conducta criminal.[12] Por supuesto, lo anterior está atado

---

[12] La defensa de imposibilidad legal es rechazada cuando no es distinguible si se trata de una imposibilidad legal o fáctica. Solamente una imposibilidad puramente legal se acepta como defensa. En *United States v. Hsu*, 155 F.3d 189, 199 n. 16 (3d Cir.1998), se mencionó que "[p]ure legal impossibility is always a defense. For example, a hunter

al principio de legalidad pues se busca garantizar que el resultado deseado o previsto por el actor constituya un delito.[13] *Íd.*, págs. 326-327. Por eso, si el resultado previsto por el sujeto *ab initio* no es un delito, no será culpable de una tentativa, a pesar de que creyera firmemente que su objetivo era criminal.

Finalmente, la imposibilidad inherente ocurre cuando la conducta realizada por el sujeto para cometer el delito es ilógica y totalmente inapropiada para el objetivo buscado o, lo que es lo mismo, no podría realísticamente producir el resultado intentado.[14] La imposibilidad inherente tiende a aceptarse como defensa, resultando impune la conducta bajo esta teoría. *Íd.*, págs. 332-334.

Además de las distintas interpretaciones defendidas por los comentaristas aludidos en esta Opinión, aprovechamos para destacar jurisprudencia. En el Derecho

---

cannot be convicted of attempting to shoot a deer if the law does not prohibit shooting deer in the first place". Mas sin embargo, se reconoció que cuando no se trata de una imposibilidad puramente legal, "the distinction between factual and legal impossibility is essentially a matter of semantics, for *every* case of legal impossibility can reasonably be characterized as a factual impossibility. [...] [T]he great majority of jurisdictions have now recognized that legal and factual impossibility are ´logically indistinguishable,´ and have abolished impossibility as a defense". (Cita omitida). *Íd.*, pág. 199.

[13] En los sistemas de Derecho Civil a la imposibilidad puramente legal se le conoce como delito putativo o error de prohibición al revés. Véase H. Jescheck y T. Weigend, Tratado de Derecho Penal: Parte General (M. Olmedo Cardenete, trad.), 5ta ed., Granada, Ed. Comares, 2002, pág. 572; S. Mir Puig, *Derecho Penal: Parte General*, 10ma ed., Barcelona, Ed. Reppertor, 2016, págs. 366-367.

[14] El equivalente de la imposibilidad inherente en el sistema de Derecho Civil es la tentativa irreal. Se trata de situaciones en las que, por ejemplo, la persona intenta matar a alguien realizando conjuros o atravesando con alfileres a un muñeco (*voodoo doll*). Véase Muñoz Conde y M. García Arán, *Derecho Penal: Parte General*, 10ma ed., Valencia, Tirant lo blanch, 2019, pág. 399.

Común encontramos que hechos similares a los de la controversia de autos han sido evaluados bajo la teoría de la imposibilidad fáctica. En *Grill v. State*, 651 A.2d 856 (Md. 1995), la acusada intentó adquirir heroína de un agente de la policía. Este le entregó a la acusada un empaque pequeño de plástico que contenía un polvo blanco inocuo bajo la impresión de que era heroína. La acusada fue hallada culpable por la tentativa de posesión de una sustancia controlada y la Corte de Apelaciones de Maryland confirmó la convicción. La Corte Apelativa determinó que el foro sentenciador no erró al hallarla culpable dado que esta tenía la intención de delinquir y realizó actos manifiestos para efectuar esa intención, frustrándose el delito solo por un hecho desconocido para ella: que lo que compró no fue heroína, sino una sustancia que lo aparentaba ser. En *People v. Siu*, 271 P.2d 575 (Cal. Ct. App. 1954), el acusado también intentó adquirir heroína de un agente de la policía. Lo que se le entregó fue polvo de talco. El acusado fue hallado culpable por la tentativa de la posesión de una sustancia controlada y la Corte de Apelaciones de California confirmó la convicción. La Corte Apelativa concluyó que la entrega de lo que el acusado pensaba que era heroína fue un acto directo e inequívoco hacia la comisión del delito.

Con relación a la jurisprudencia continental europea, resaltamos que el Tribunal Supremo español ha evaluado en

años recientes la confluencia de suficientes elementos objetivos y subjetivos en el actuar de acusados para sostener sus condenas bajo la figura de la tentativa inidónea. Véase *e.g.* S. de 3 de marzo de 2020, Núm. 924/2020 ("[L]a tentativa no puede fundamentarse en criterios objetivos y subjetivos puros, sino que se impone una tesis ecléctica. Lo esencial es que la tentativa exprese una voluntad del autor hostil al Derecho, pero, además, en cuanto la acción debe mostrarse como peligrosas *ex ante*, cabe fundamentar la tentativa también objetivamente en la concurrencia de un peligro, al menos abstracto para el bien jurídico. Esta peligrosidad de la acción es el mínimo requerido para la punibilidad de la tentativa [...]"); S. de 22 de octubre de 2015, Núm. 4700/2015 ("Se practicaron todos los actos que 'objetivamente' deberían conducir al fin planeado. Si no llegó a materializarse el apoderamiento de la cocaína fue debido a que la víctima [...] había dejado la cocaína en el domicilio y no la llevaba en el interior de la bolsa de que era portador, pero ello no priva objetivamente de idoneidad al conjunto de la operación tal y como estaba inicialmente planeada, siendo bien evidente que la intervención penal se justifica plenamente porque los autores han decidido vulnerar el bien jurídico tutelado, a través de una acción incardinada en la órbita del tipo y utilizando medios generalmente idóneos, aún cuando no lo fueron en el caso concreto").

Tomando en cuenta las interpretaciones que se han desarrollado para atender las tentativas inidóneas en otras jurisdicciones, concluimos que la mejor que se adapta a nuestro sistema penal es la teoría civilista incorporando el análisis de elementos objetivos y subjetivos. Según hemos apuntado, el marco de revisión debe ajustarse al requisito de inequivocidad estatuido en el Art. 35 del Código Penal, *supra*. Así, las acciones del actor deben apuntar por sí mismas y sin lugar a duda hacia un propósito criminal. Siendo este requisito uno orientado al elemento objetivo del delito, naturalmente hay una preferencia por acoger un estándar cuyo enfoque se adhiera a la evaluación de la conducta exteriorizada por el acusado. No obstante, toda actuación delictiva está acompañada de "factores subjetivos y valoraciones normativas que hacen imposible llevar a cabo una rigurosa separación formal del tipo en componentes objetivos y subjetivos", pues si bien se trata de "un examen objetivo, ya que se considerará si los actos estaban inequívocamente dirigidos a cometer determinado delito, existe una tendencia subjetivista a relacionar la apariencia inequívoca del acto con la intención del autor". Nevares Muñiz, *supra*, pág. 371. Por lo cual, luego de sopesar los posibles enfoques que pueden aplicársele al análisis de las tentativas inidóneas o imposibles, entendemos oportuno aplicar uno objetivo-subjetivo.

Partiendo de lo anterior, se interpretará que bajo la figura de la tentativa inidónea existen acciones inequívocamente dirigidas a cometer un delito cuando el peligro de lesión al bien jurídico protegido fuese patente para una persona promedio que, estando en la misma posición del actor, pensaría que la acción ejecutada razonablemente tenía una probabilidad real de producir el resultado pretendido. Aplicando este análisis, cumplirán con el requisito de inequivocidad aquellas acciones que de su faz razonablemente constituyan para un observador objetivo evidencia suficiente de la intención criminal del acusado, a pesar de que fuesen inidóneas para el fin propuesto.

En la situación que el actor conociera la imposibilidad de consumarse un delito, sus acciones no serían punibles como tentativa. Esto porque sus actuaciones no podrían considerarse que estaban inequívocamente dirigidas a cometer determinado delito cuando desde el inicio conocía que era imposible delinquir. Por otra parte, cuando el actor desconociera la imposibilidad de la consumación del delito, en lugar de seguir un enfoque puramente subjetivo en el cual sería inequívoca toda acción que llevó a cabo el acusado con la intención de cometer un delito, se evalúa la conducta objetivamente, desde el punto de vista de una persona promedio imparcial. Para que sea punible bastaría con "preguntar si para cualquier persona medianamente inteligente y juiciosa puede hablarse

realmente de un intento serio, de un intento que una persona media podría realizar si quisiera pretender el resultado, aunque pudiera fracasar". S. Mir Puig, *La Tentativa Inidónea en el Nuevo Código Penal Español*, 70 Rev. Jur. UPR 1033, 1039 (2001). De esta manera, el juzgador debe ponderar el propósito, las circunstancias y el contexto en que actuó el sujeto, ubicándose en su misma posición al momento de realizar la acción. Si al concluir el ejercicio anterior se determina que un observador imparcial pudiera razonablemente deducir o creer que existía un peligro de lesión al bien jurídico protegido, entonces la conducta del actor se considerará que estaba inequívocamente dirigida a cometer el delito intentado. Por tal motivo, esa conducta pudiera ser punible como tentativa si están presentes los demás elementos del tipo delictivo. En esencia, el análisis "presupone que se juzgue el hecho desde una perspectiva *ex ante* con el propósito de determinar si, antes de realizarse la acción y tomando en consideración los datos conocidos por el autor, existía una posibilidad no especulativa de que se le causara daño a la víctima". Chiesa Aponte, *op. cit.*, pág. 212.

Paradigmáticamente, el profesor Chiesa Aponte señala en su tratado de Derecho Penal la situación siguiente: "Juan compra un polvo blanco creyendo que adquiere cocaína. Sin embargo, lo que verdaderamente le vendieron fue *baking soda*. Lo acusan de tentativa de posesión de sustancias

controladas. […] [N]o es posible cometer el delito [de posesión de sustancias controladas], pues la sustancia poseída era un polvo inocuo y no droga". Chiesa Aponte, *op. cit.*, pág. 211. Al aplicarle un estándar objetivo-subjetivo a esta tentativa inidónea, el profesor concluye que "[c]on toda probabilidad, la persona promedio confundiría un polvo blanco como el *baking soda* con cocaína. Por ende, en este caso, Juan debe ser encontrado culpable de tentativa de posesión de sustancias controladas". *Íd.*

El enfoque objetivo-subjetivo excluye la punibilidad de los actos que de su faz parezcan incapaces de producir el resultado deseado porque un observador imparcial no podría razonablemente llegar a esa conclusión. Es decir, se excluyen de punibilidad los supuestos en los cuales no haya un mínimo de peligrosidad para el bien jurídico protegido. De esta manera se "impide una extensión de la punibilidad a casos que más que un peligro para el bien jurídico o un mal ejemplo para la comunidad, mueven a risa o compasión por el sujeto". Muñoz Conde y M. García Arán, *Derecho Penal: Parte General*, 10ma ed., Valencia, Tirant lo blanch, 2019, pág. 399. Toda tentativa en la que, de haber sido correctos los datos que el autor tenía de la situación, habría razonablemente producido la consumación del delito intentado, supone un peligro al bien jurídico protegido y debe estar sujeta a pena.

El enfoque de interpretación que aquí adoptamos es cónsono con el delito de tentativa vigente en nuestro Ordenamiento Penal y logra un balance adecuado entre las diferentes posturas existentes para la evaluación de las tentativas inidóneas.

**D.**

Sobre el delito especial que se le imputó al recurrido haber atentado, basta con mencionar que el Art. 277 del Código Penal de Puerto Rico, 33 LPRA sec. 5370, pretende proteger el orden y la seguridad en las instituciones penales. En lo concerniente, la disposición legal establece que:

> **Toda persona que introduzca, venda o ayude a vender, o tenga en su poder con el propósito de introducir o vender drogas narcóticas,** estupefacientes **o cualquier sustancia controlada** o armas de cualquier clase, bebidas alcohólicas o embriagantes, explosivos, proyectiles, teléfonos celulares, u otros medios de comunicación portátil o cualquier otro objeto que pudiera afectar el orden o la seguridad de una institución penal o de cualquier establecimiento penal bajo el sistema correccional, dentro o fuera del mismo, **a un confinado, a sabiendas de que es un confinado, será sancionada** con pena de reclusión por un término fijo de tres (3) años.
>
> .   .   .   .   .   .   .   .

(Énfasis suplido). *Íd.*

Expuesto el derecho aplicable a la controversia de autos, procedemos a resolver.

**III**

Nos corresponde adjudicar si incidió el Tribunal de Apelaciones al concluir que no podía encontrársele culpable

al recurrido por infracción al delito estatuido en el Art. 277 del Código Penal, *supra*, en la modalidad de tentativa. El tribunal revisor determinó que, como el objeto que tenía el acusado en su posesión era harina de trigo, estaba ausente el elemento del delito especial exigente de que el objeto sea una sustancia controlada u otro objeto que pudiera afectar el orden o la seguridad de la prisión. Infirió que el recurrido no podía ser hallado culpable por el delito especial ni por su tentativa ya que no estaban presentes desde un inicio la totalidad de los elementos del delito especial. Por esta razón, resolvió que castigar al recurrido por la tentativa de infringir el Art. 277 del Código Penal, *supra*, implicaría penalizar al recurrido por una conducta no provista mediante estatuto penal, lo que sería contrario al principio de legalidad.

En atención a esto, atenderemos el planteamiento relacionado al principio de legalidad, integrando a nuestra discusión el estándar expuesto para examinar las tentativas inidóneas. En primer lugar, nos enfocamos en la evaluación de si el delito de la tentativa según le fue aplicado al recurrido por el tribunal sentenciador es una interpretación analógica impermisible porque el recurrido lo que poseía era harina de trigo y no cocaína. Luego, consideramos si están presentes los elementos constitutivos del delito de la tentativa, de manera que deba reinstalarse

el dictamen del Tribunal de Primera Instancia hallando culpable al recurrido.

Como punto de partida recalcamos que, de conformidad con el principio de legalidad, es necesario que el resultado deseado o previsto por el acusado constituya un delito. En este caso, la disposición legal que contiene el resultado previsto por el recurrido al realizar los hechos objeto de examen es el Art. 277 del Código Penal, *supra*. Este Artículo le brinda aviso suficiente a la ciudadanía de la consecuencia penal que tiene la conducta de introducir sustancias controladas a una institución penal. Por otra parte, el Ordenamiento Penal provee aviso a la ciudadanía sobre el delito de la tentativa en el Art. 35 del Código Penal, *supra*. La definición del delito de tentativa ahí expresado no implica una falta de advertencia sobre la conducta sujeta a castigo. Partiendo de la premisa que los delitos particulares que los acusados están tratando de cometer no son imprecisos, el Art. 35 del Código Penal, informa al público en general que también es conducta castigable realizar actos inmediatos e inequívocos en esfuerzo por cometer esos delitos particulares que no terminan cometiéndose por causas ajenas a su voluntad. Puede valorarse entonces que el recurrido tenía aviso suficiente en cuanto a que estaba prohibido introducir sustancias controladas a una institución penal con el fin de entregárselas a un confinado. Así también, tenía aviso

suficiente en cuanto a que las actuaciones dirigidas a cometer el anterior delito que no lograran concretarse por razones ajenas a su voluntad eran punibles como tentativa.

Dirigimos ahora la discusión a si el delito de la tentativa según le fue aplicado al recurrido implica que se le impuso una pena por analogía violatoria del principio de legalidad. La decisión del foro *a quo* descansa completamente en el hecho de que el paquete entregado al recurrido y el cual este ingresó a la prisión contenía harina de trigo y no cocaína. Como ningún narcótico estuvo involucrado, concluyó que no se estableció el cuerpo delictivo del delito por el cual fue condenado el recurrido. Sin embargo, según reseñamos, para que un delito sea punible en la modalidad de tentativa, incluso cuando se trate de un delito imposible, los elementos que deben concurrir son los que aparecen en el Art. 35 del Código Penal, *supra*. Esto es, que el acusado: (1) actúe con el propósito de producir o con conocimiento de que su conducta producirá un delito; (2) realice acciones inequívoca e inmediatamente dirigidas a la consumación de un delito, y (3) no se consuma el delito por circunstancias ajenas a su voluntad. Desde luego, la mera intención de cometer un delito en sí no es suficiente para incurrir en una tentativa. Pero si una persona formula la intención y luego realiza actuaciones que en el curso ordinario de las cosas resultarían en la comisión de un delito, la tentativa de cometer ese delito se concreta.

A falta de algún elemento del delito intentado por razón de que la tentativa es inidónea, los tribunales debemos determinar, *inter alia*, si los actos realizados por el acusado constituyen "acciones inequívocas", de manera que incluso con esa ausencia sea posible penalizar conducta manifiestamente criminal. En el contexto de las tentativas inidóneas, existen acciones inequívocamente dirigidas a cometer un delito cuando una persona común y corriente, bajo las mismas circunstancias que el actor, entendería que realizar tales acciones sería adecuado para lograr el resultado delictivo pretendido. El estándar que explicamos sobre lo que constituyen acciones inequívocamente dirigidas a la comisión de un delito en el contexto de la punibilidad de las tentativas, está comprendido dentro de la descripción literal del texto legal del Art. 35 del Código Penal, *supra*. Por tanto, esta apreciación del texto legal no puede catalogarse como una analogía ya que la palabra "inequívoca" aparece en el texto del delito y meramente se está interpretando. En tal sentido, no se estaría violentando el principio de legalidad si se le encuentra culpable al recurrido por el delito de tentativa a pesar de que el objeto que poseía era harina de trigo, siempre que se cumplan con todos los elementos del tipo delictivo según se delinean en el referido Artículo. Pasemos entonces a evaluar si bajo el cuadro fáctico de la presente controversia están presentes estos elementos constitutivos.

En primer lugar, atendemos si están presentes los elementos objetivos del delito. Por un lado, las acciones llevadas a cabo por el recurrido fueron inequívocas porque, sin lugar a duda, apuntan o denotan la comisión de un delito. Una persona promedio confundiría un polvo blanco, como lo es la harina de trigo, con cocaína, y más si consideramos que el paquete fue elaborado por una experta acostumbrada a confeccionar cocaína simulada. Conforme a los estándares probatorios, la característica inequívoca de la acción pueda ser deducida mediante prueba admisible. En el presente caso, del expediente surge amplia evidencia para respaldar la conclusión del foro primario de que el recurrido estaba intentando cometer el delito de posesión e introducción de objetos a un establecimiento penal. Hay varios hechos objetivos que corroboran inequívocamente la intención delictiva. Por un lado, el recurrido fue el primero en comunicarse con el confinado en busca de un "trabajo" para obtener dinero. Se reunió con el agente encubierto después de que el confinado le dijera la hora, la fecha y el lugar para hacerlo. Aceptó dinero como compensación por realizar el plan trazado. Entró el paquete que le entregaron a la prisión clandestinamente. Se reunió con el confinado para la entrega del paquete. No hay ambivalencia en los actos; no tienen sentido en otro contexto que no sea que el recurrido intentó cometer el delito de posesión e introducción de objetos a un

establecimiento penal. Por otro lado, las acciones realizadas por el recurrido también fueron inmediatas porque el recurrido accedió al plan que le presentó el confinado, se reunió con quien creía era primo del confinado, tomó el empaque que este le entregó, introdujo el empaque a la Institución Penitenciaria, contactó al confinado para entregárselo y finalmente se lo entregó. Es decir, según el plan delictivo del autor, se llegó hasta la última fase para la consumación del delito intentado.

En segundo lugar, atendemos si está presente el elemento subjetivo exigido por la tentativa. En el delito de posesión e introducción de objetos a un establecimiento penal, se contempla como un elemento de "circunstancia" que el bien sea una sustancia controlada. En este caso, el recurrido entendía que estaba presente una circunstancia relacionada al objeto delictivo que en realidad no estaba presente; que el empaque contenía cocaína. Durante el operativo policial, este estuvo en comunicación con el confinado y el agente encubierto para coordinar la entrega de la supuesta cocaína. Es decir, la prueba demuestra que el recurrido entendía que lo que se le entregó fue una sustancia controlada.[15] En consecuencia, el recurrido actuó a propósito sobre ese elemento porque creía que la

---

[15] El agente encubierto narró que al comunicarse con el recurrido le indicó que le iba a entregar lo siguiente: "'Lo mismo de la otra vez', refiriéndome al 31 de perico, o sea, no utilicé la palabra 'cocaína' y 'perico', pero 'lo mismo de la otra vez'". Petición de *Certiorari*, Apéndice, pág. 185.

circunstancia existía. A su vez, el delito especial contempla como un elemento de "resultado" el que se introduzca el objeto en una institución penal. En el caso de autos, el recurrido introdujo el objeto dentro del Centro Médico Correccional de Bayamón y se lo entregó al confinado a sabiendas de que era un confinado. Por ello, actuó a propósito porque su objetivo consciente era la producción del resultado de introducir una sustancia controlada dentro de la cárcel.

En tercer lugar, atendemos el elemento encaminado a establecer que la violación del delito atentado no fue consumada por circunstancias ajenas a la voluntad del acusado. En el caso ante nos, el hecho de que el objeto se trataba de harina de trigo en vez de una sustancia controlada se debió a que el agente encubierto no le proveyó la droga esperada al recurrido. Es decir, la razón por la cual el objeto no era cocaína se debió a una causa externa a la voluntad del recurrido. Sin lugar a duda, el delito no se consumó totalmente por hechos ajenos y desconocidos por este.

Concluimos que se cumplen todos los elementos del delito de tentativa. El recurrido actuó con el propósito de producir el delito tipificado en el Art. 277 del Código Penal, *supra*, y realizó acciones inequívoca e inmediatamente dirigidas a la consumación del delito, el cual no se consumó por circunstancias ajenas a su voluntad.

**IV**

Por los fundamentos antes expuestos, se revoca la Sentencia del Tribunal de Apelaciones y se reinstala la Sentencia dictada por el Tribunal de Primera Instancia.

Se dictará Sentencia de conformidad.



Mildred G. Pabón Charneco
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Narciso Reyes Carrillo<br><br>Recurrido | | CC-2019-0905 |

SENTENCIA

En San Juan, Puerto Rico, a 26 de agosto de 2021.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, se revoca la Sentencia del Tribunal de Apelaciones y se reinstala la Sentencia dictada por el Tribunal de Primera Instancia.

Lo acordó y manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez y los Jueces Asociados señores Estrella Martínez y Colón Pérez concurren sin opinión escrita. El Juez Asociado señor Feliberti Cintrón no interviene.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo